**People of the State of Illinois, Plaintiff-Appellee, v. Robert S. Schehr, Defendant-Appellant.**

Gen. No. M–51,059.

First District, Fourth Division.

August 18, 1967.

Sydney B. Wexler and Morris J. Wexler, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Zagel, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

CHARGE

(1)　Disorderly conduct.[1]

(2)　Resisting a Peace Officer.[2]

DEFENSE AT TRIAL

Defendant did not commit the acts upon which the charges were based.

JUDGMENT

After a bench trial, the court found defendant guilty of both crimes and imposed a fine of $50 for each offense.

POINTS RAISED ON APPEAL

Defendant was not proven guilty beyond a reasonable doubt.

EVIDENCE

**Testimony of Witnesses for the State**

Leonard Sykes, a Chicago police officer, testified that at about 12:00 noon, on May 27, 1965, he was in the

---

[1] Ill Rev Stats 1963, c 38, § 26-1:

> (a)　A person commits disorderly conduct when he knowingly:
> (1)　Does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace; . . . .

[2] Ill Rev Stats 1963, c 38, § 31-1:

> A person who knowingly resists . . . the performance by one known to the person to be a peace officer of any authorized act within his official capacity shall be fined . . . or imprisoned . . . or both.

288

vicinity of the building at 1212 North Lake Shore Drive, Chicago (within which hearings were being held by the UnAmerican Activities Committee of the United States House of Representatives) and that he saw defendant, in a group of other persons, walk down the sidewalk beside the building. Defendant then jumped a barricade and, after unsuccessfully attempting to pass through police lines formed in front of the door, sat down with other persons before the entrance. When first requested to leave the property and then warned that a failure to do so would cause their arrest, defendant and the others said nothing, but linked their arms and remained sitting. Defendant was placed under arrest, disengaged from his companions, and then, because he refused to walk, had to be bodily carried to a police van.

On cross-examination, Officer Sykes testified that he had no written report other than a police arrest slip, and that he was testifying from recollection as to events which occurred four months prior to trial.

Gary Rodigan, also a Chicago police officer, corroborated the testimony of Sykes. On cross-examination, he stated that he did not make the physical arrest, but that he signed the complaint against defendant for resisting Officer Sykes and another policeman.

**Testimony of Witnesses for the Defense**

Robert Schehr, the defendant, testified that he was a twenty-year-old student at the University of Chicago, and that on the day in question, he went to the Committee hearings at 1212 North Lake Shore Drive. Upon his arrival, he noticed a commotion in front of the main entrance. When he got a little closer he saw about twenty-five people seated in front of the entrance. Then police vans arrived, and with traffic barricades policemen started moving the crowd away from the front onto the other side of the sidewalk that runs from the building doorway to the street. He was pushed and moved to the

grass bordering the north side of that sidewalk. At all times, he was behind the barricade and never sat down.

Police then began carrying away demonstrators, and there was some commotion near defendant in the crowd behind the barricade. As defendant turned around to see what the person next to him was doing, he noticed a policeman jump over the barricade from the sidewalk to the grassy side. The person next to him was grabbed by someone wearing a green sweater or sweatshirt and then defendant was "grabbed from behind and thrown down to the ground and on top of me was a man wearing coveralls." Defendant was sat upon, choked, and his arm was twisted before he was picked up and put into a police van by the man in coveralls. Defendant did not know the man's name, but he was not Officer Rodigan or Officer Sykes, who defendant said filled out his arrest complaint at the 18th District jail. He said that "as far as I understand the word," he did not "resist" a police officer.

On cross-examination, defendant stated that he did not actually know whether this man and others also dressed in coveralls were police officers since they were not wearing stars, as were the uniformed policemen at the scene, but he assumed they were policemen since they were "apparently officially maneuvering," moving in and out of police vans, carrying people, and seeming to make arrests.

Eric Joseph testified that he was a fellow student at the University of Chicago, knew defendant, joined him at the demonstration, and was standing with him in the crowd behind the barricade. A few arrests were being made of people who were sitting down when several police officers came over the barricade into the crowd. This witness said that he later found out that one of the men, dressed in mechanic's pants and a green sweater, was a police officer. The witness and defendant were knocked to the ground, arrested, and taken to a police van.

On cross-examination, Joseph stated that he and defendant were part of "a number of people that went down (to the demonstration) from the University of Chicago." Although they did not go together, ". . . I met him as soon as I got off (a bus) at the demonstration; and I was with him during the whole time of the demonstration. We were in the picket line together, and when the sit-in took place we were together the whole time." He said that, as he turned around to move back in response to police directions, he saw a policeman five or ten feet away from and running towards the defendant; that he, himself, was then knocked to the ground and when he was being carried to the police van, he again saw defendant on the ground with a policeman on top of him.

Judith Joyce, a sociologist, said that she happened to be in the courtroom while defendant was on the stand, and that she recognized him since she had also been at the anti-HUAC demonstration on May 27, 1965. Upon recognizing defendant, she sent a note to defense counsel through another counsellor who told her to wait in the hall. Although she admittedly walked up to take a good look at defendant while he was on the stand, she said she "wasn't concentrating on listening, I was concentrating on the boy," and the court permitted her to testify despite a rule excluding witnesses.

She said that she had gone to 1212 North Lake Shore Drive on that date because of her membership in "Women For Peace," for the purpose of demonstrating, and had marched in a picket line and carried a poster. At one point, when she was not in the line, she saw some activity "to my left rear and turned and I saw him [defendant] fall with violence. . . . Whether he was pushed or shoved or what, I don't know." Defendant and the witness were on the same side of the barricade which was between them and the demonstrators, and neither of them was sitting down. While defendant was on the ground, a man in

291

coveralls was on top of him, twisting his arm. When she reached to retrieve defendant's eyeglasses, she was struck on the head with a police club. She withdrew and "was restraining a couple of people who wanted to get into the incident." Defendant was then carried bodily to a police van.

On cross-examination, the witness stated that defendant was just on the other side of a barricade from her, so they were separated by only the width of the barricade, some eighteen inches.[3] Nevertheless, she did not see from which direction the officer came, and did not see him knock defendant to the ground. She stated that she was emotionally upset because she thought the officer was using unnecessary force on defendant and that at first she thought defendant was a girl when he was on the ground. She also stated that she was in the crowd watching because she "felt that people should observe the manner in which the police did arrest these demonstrators."

OPINION

 The single issue presented on this appeal is whether the evidence was sufficient to prove defendant guilty beyond a reasonable doubt. Ill Rev Stats, 1963, c 38, § 3-1. The testimony of witnesses for the State directly conflicts with that of witnesses for the defense, but if the trial court chose to believe only the two police officers, the evidence was, we think, sufficient to support the trial court's finding. It is the function of the trier of fact to decide which of conflicting stories to believe,

---

[3] The testimony of this witness on direct examination concerning her position and that of defendant in relation to the barricade can be reconciled with her answers on cross-examination only if she might have been referring to more than one barricade. There is no evidence of there having been more than one, however, so the trial judge may well have considered this a matter affecting her credibility, or demonstrating confusion on her part.

292

basing its judgment not only on the language of the testimony presented, but also upon the demeanor and conduct of the witnesses it has the opportunity to observe. People v. Craddock, 30 Ill2d 348, 353, 196 NE2d 672; People v. Woodruff, 9 Ill2d 429, 434, 137 NE2d 809. A reviewing court will not substitute its judgment on credibility for that of the trier of fact except where the evidence "is so improbable or unsatisfactory as to raise a serious doubt of defendant's guilt." People v. Coulson, 13 Ill2d 290, 296, 149 NE2d 96; People v. Ostrand, 35 Ill2d 520, 532–533, 221 NE2d 499; People v. Bailey, 76 Ill App2d 310, 317, 222 NE2d 268. In this case, the evidence presented by the State is not unsatisfactory, improbable or contradictory.

The defendant would have us reverse his conviction on the ground that the police officers were not to be believed because they "were emotionally involved in making arrests." Further, that the prosecution testimony should be contrasted with that of the "two impartial eyewitnesses" for the defense. We cannot agree that the evidence indicates in any way that the police officers were in such an emotional state as to render their testimony unsatisfactory, improbable or contradictory. On the other hand, one of the defendant's "impartial" witnesses was a person who was more than a casual acquaintance of the defendant, who was admittedly with him during the demonstration, and who was himself also arrested for the same offense. The other "impartial" witness was also a part of the same demonstration and had admittedly gone to the scene looking for such acts of police brutality as she claimed occurred at the time of defendant's arrest. We need not comment more extensively on the witnesses in light of our holding above that the trial court is to assess credibility of witnesses and determine the weight, if any, to be given their testimony. People v. Coulson, 13 Ill2d 290, 295–296, 149 NE2d 96, and citations therein.

This record presents no compelling reasons why the police officers should have been disbelieved and full credibility granted to the co-demonstrators who were witnesses for the defense. Accordingly, the judgment is affirmed.

Affirmed.

DRUCKER and McCORMICK, JJ., concur.