**People of the State of Illinois, Plaintiff-Appellee, v. Anthony Gibbs, Defendant-Appellant.**

**Gen. No. 53,050.**

First District, Second Division.

September 23, 1969.

Rehearing denied October 21, 1969.

Leo E. Holt, of Chicago (James G. Carr, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James S. Veldman, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Defendant was found guilty at a bench trial of the violation of section 31–1 of the Criminal Code, in that he knowingly obstructed a peace officer in the performance of his duties. (Ill Rev Stats 1967, c 38, par 31–1.) He received a fine of $20 and was assessed costs in the amount of $5. On this appeal defendant contends that the conviction violates his constitutional right of free speech,

and that he was not proved guilty beyond all reasonable doubt.

The People's evidence reveals that on December 11, 1967, Chicago Police Officers Frank Rappaport and Luther Arnold while cruising in their patrol car in the Woodlawn District of Chicago were informed by an unidentified person that a group of teen-aged boys was forming in the vicinity of 65th Street and Woodlawn Avenue. Prior to receiving this information, the officers had received a radio communication of youth gang trouble in the area. The officers proceeded along Kimbark Avenue to 63rd Street, where they observed a group of 10 to 12 boys moving swiftly northbound along Kimbark Avenue. The youths blocked the sidewalk and were shouting obscenities as they moved along. The officers stopped the boys near The Woodlawn Organization office (hereinafter referred to as the "T.W.O.") at 1204 East 63rd Street, and the boys were ordered to stand with their hands against a nearby building. The officers then commenced a search of the group.

The officers had been searching the boys approximately one minute, when defendant, a T.W.O. staff member, came out of the T.W.O. office and demanded to know what was going on. The officers told defendant not to interfere in police business, but defendant began objecting to the officers' treatment of the boys. He stated that they had no right to search the boys and that they were thereby violating the boys' constitutional rights. Defendant then told the boys that they did not have to submit to the officers' search and that they should go into the T.W.O. office, which defendant stated was private property, where the officers would not be able to search them without a proper warrant. At this point a large group of people began to gather at the scene.

Defendant then left the officers and the boys and went into the T.W.O. office, stating that he was going to tele-

115

phone the officers' commander in order to have the matter straightened out. As he walked away, 7 or 8 of the boys followed him inside. The officers also entered the office to bring the boys out, but found that the boys in question had joined a group of 35 to 40 other youths who were in the office at the time. Defendant told the officers they had no right on the T.W.O. premises without a warrant since it was private property, and defendant was again warned by the officers that he was interfering with police business. Defendant continued to maintain his position and was then placed under arrest.

Defendant and his witnesses testified that they were inside the T.W.O. office and observed a group of boys being searched outside the office. Defendant went outside to inquire into the situation and informed the officers that they were violating the constitutional rights of the boys, in that "there was a new law that had been passed —that had been vetoed by the Governor on stop and frisk in this State." He told the officers that he was going to telephone their commanding officer in order to straighten the matter out. Defendant thereupon entered the T.W.O. office, telephoned the officers' commander, and was thereafter placed under arrest. Defendant denied that he induced any of the group stopped by the officers to follow him into the T.W.O. office. He stated that he was in no manner abusive to the officers, and that he gave them no cause to place him under arrest.

■ Defendant first contends that the conduct which serves as the basis of his conviction is protected by the constitutional right of free speech and that, therefore, the application of the penalty provisions of section 31–1 for such conduct is improper. We are of the opinion that under the evidence taken as a whole, defendant was convicted on the basis of conduct proscribed by the statute and which was designed to have the foreseeable result of obstructing the two police officers in the proper performance of their duties.

116

■ We are in agreement with defendant's position that a state may not unduly suppress free communication of views under the guise of conserving desirable conditions. Cantwell v. Connecticut, 310 US 296. Nonetheless, it was also stated in the Cantwell opinion, at page 308, that where the clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to the public safety, peace or order appears, the power of the state to prevent or to punish cannot be denied. Thus, it has been held that the constitutional guarantee of free speech does not give a person the unbridled right to speak. See Konigsberg v. State Bar, 366 US 36, 49–51. The constitutionality of section 31–1 has been upheld by our Supreme Court in People v. Raby, 40 Ill2d 392, 240 NE2d 595, which agreed with an earlier decision on the question rendered by the United States District Court in Landry v. Daley, 280 F Supp 938, 959.

Defendant, however, directs our attention to language in the Landry case, adopted by the Supreme Court in the Raby case, to the effect that mere argument with a police officer concerning the validity of an arrest or other police action is not proscribed by the statute, but that what is proscribed is "some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent, or delay the performance of the officer's duties, . . . ." See Landry v. Daley, 280 F Supp, at p 959; see also People v. Raby, 40 Ill2d 392, at pp 398–399, 240 NE2d 595. The United States Supreme Court has also observed that mere remonstrances or criticisms of an officer in the performance of his duties are not usually held to be the equivalent of unlawful interference, but that the use of force or the threatened use thereof is not always an indispensable ingredient of the offense of unlawful interference. District of Columbia v. Little, 339 US 1, 6.

According to the evidence supporting the People's case, a situation is presented here which was not contemplated by the language in the Landry and Raby cases quoted

above, namely, a situation in which the conduct complained of falls between "mere argument" with the officer and "some physical act" which interferes with the performance of his duties.

The People's evidence shows that the boys were stopped by the officers because they were acting in a disorderly manner on a public sidewalk and further because the officers, shortly prior thereto, had been informed of youth gang trouble in the immediate area. The evidence also shows that the boys submitted to the search, apparently without objection, by placing their hands against the building as ordered by the officers. The search had been in progress under these controlled circumstances approximately one minute before defendant arrived on the scene and demanded to know what was going on. He was told by one of the officers that the boys were under arrest, that it was a police matter, and that it was no concern of his. Defendant thereupon proceeded to argue with the officers concerning the boys' constitutional rights. Defendant then directed statements to the boys, advising them to enter the T.W.O. office where the officers would be unable to search them without a proper warrant. The People's evidence shows that a large crowd then gathered at the scene. After defendant made the statements to the boys and turned to enter the T.W.O. office, the boys snickered and most of them began to follow him into the office. In the office the boys joined a group of 35 to 40 other youths and, as Officer Arnold stated at trial, "it would have been difficult to pick them out of the crowd." Officer Rappaport testified that he and Officer Arnold had "lost complete control of the situation."

It is clear that defendant here did not "merely argue" with the officers concerning the search being made of the boys; he went further, and directed statements to the boys, advising them that the officers had no right to

118

search them and telling them that if they entered the T.W.O. office the officers would be powerless to search them without a warrant. The boys then followed defendant into the T.W.O. office as he entered, and joined 35 to 40 other youths already in the office. The officers, as the evidence shows, initially had complete control of the situation, but after defendant appeared on the scene and instructed the boys to go into the T.W.O. office, the officers lost control of the boys and were unable to complete the arrest. Under these circumstances, it is clear that defendant interfered with and obstructed the officers in the performance of their duties as completely and as effectively as if he physically touched or otherwise physically interfered with the officers.

In People v. Cooks, 58 Cal Rptr 550 (Cal App, 1967), a police officer entered a cocktail lounge run by the defendant, for the purpose of questioning a customer who resembled a person wanted for a robbery. When the officer requested the suspect's identification, the defendant interfered and wanted to know the officer's purpose in questioning his customer. The suspect at first made a motion toward his pocket, as if attempting to procure identification, and defendant motioned for him to stop. Defendant told the suspect not to show the officer anything and the officer told the defendant that the matter was not his concern. A discussion ensued between the officer and the defendant, wherein both repeated their positions. The suspect thereafter refused to show the officer his identification and was placed under arrest, and defendant was charged with obstructing the officer in the performance of his duties.

The court in the Cooks case stated, p 552:

> "Defendant . . . deliberately and willfully set about to delay and obstruct the police officer in his rightful attempt to question the suspect; and, defendant pointedly succeeded in his purpose. Such speech-

119

conduct with respect to this front line function of the law is even less tolerable than a focused attempt to influence a particular court decision."

Defendant contends that the Cooks case is distinguishable from the case at bar for the reasons that the suspect in Cooks was, in fact, placed under arrest and that there was a definite relationship in the Cooks case between the defendant's interference and the suspect's refusal to produce his identification. It need only be said in this regard that the officers here were unable to complete their arrest of the boys on the disorderly conduct charge because defendant told them to enter the T.W.O. office, which they did, where they mingled with 35 to 40 other youths.

The three other points raised by defendant question the sufficiency of the evidence in support of his conviction.

■ ■ The determination of the sufficiency of evidence and the weight to be given to the testimony of the witnesses is a matter for the trier of fact. That determination will not be set aside except where the evidence is so improbable or unsatisfactory as to raise a serious doubt as to the defendant's guilt. People v. Schehr, 88 Ill App 2d 287, 292–293, 232 NE2d 566. The foregoing summary of the People's evidence reveals that there was sufficient evidence, if believed, to find defendant guilty of a violation of section 31–1 of the Criminal Code, beyond a reasonable doubt.

Specifically, as to the question of whether the officers were acting in a legal manner in searching the youths, the People's evidence is that the officers were informed of youth gang trouble in the immediate area and observed the youths, whom they later stopped, acting in a disorderly manner. Officer Arnold testified that the youths were stopped, placed under arrest for disorderly conduct, and ordered to place their hands against the

nearby building. Although Officer Rappaport testified that the boys were not placed under arrest prior to the time when the defendant interfered, he did state that the officers were in the "preliminary stages of taking the boys into custody." It should also be noted that defendant spent most of the time speaking with Officer Rappaport, whereas Officer Arnold concerned himself with searching the youths. Nevertheless, this was a matter of credibility of the witnesses, to be determined by the trier of fact, and not a matter of competency or admissibility of the evidence.

The evidence supports defendant's conviction beyond a reasonable doubt.

For these reasons the judgment is affirmed.

Judgment affirmed.

LYONS, P. J. and McCORMICK, J., concur.