THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD JEROME WEATHINGTON, Defendant-Appellant.

Fourth District   No. 15394

Opinion filed September 17, 1979.

MILLS, J., dissenting.

Richard J. Wilson and David Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Marc D. Towler and Larry Wechter, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Defendant, then aged 17, was charged with aggravated battery and obstructing a police officer (Ill. Rev. Stat. 1977, ch. 38, pars. 12—4 and 31—1, respectively) and was found guilty of both charges by a jury. The trial court granted defendant's motion for judgment notwithstanding the verdict on the aggravated battery charge, but denied a similar motion on the obstructing charge. Defendant was sentenced to 1 year's conditional discharge for obstructing a police officer, the sentence to run concurrently with a disposition in a juvenile case.

On September 8, 1978, two officers were driving an unmarked car in the area of Champaign Centennial High School. They saw defendant and several other youths throwing dice in the high school parking lot. One of the officers approached defendant and began talking with him. Defendant's discussion with the officer led to defendant's arrest for the charge of aggravated battery. Defendant was transported to Champaign County jail.

At the station, Officer John Schuffert asked defendant for his name, address, birthdate, birth place, social security number, occupation, and physical description. Initially, defendant refused to give any information to Schuffert, even though Schuffert asked for defendant's identification several times. Schuffert warned defendant that he was required by law to disclose the information, and after numerous requests, defendant gave his name, address, and date of birth. Defendant refused to disclose any further information. Defendant was then placed in a holding cell, and, after a few minutes, he agreed to provide the rest of the information.

Defendant admitted that he refused to answer all of Schuffert's questions until after he was placed in the holding cell. Defendant also indicated that he requested the use of the telephone to call his family, but Schuffert would not allow defendant to do so until he answered all of Schuffert's questions. After defendant answered Schuffert's booking questions, defendant was allowed to place a telephone call to his family.

On appeal, defendant argues that the United States and Illinois constitutions bar his prosecution for refusing to answer the officer's booking questions after arrest. Defendant also argues that his conduct does not constitute the offense of obstructing a police officer. Since we

agree with defendant that his conduct did not constitute a crime, we need not address his constitutional claim.

Section 31—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 31—1) states:

> "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity commits a Class A misdemeanor."

The information charging defendant with obstructing states:

> "[The defendant] did knowingly obstruct the performance by John Schuffert of an authorized act within his official capacity, namely: booking the defendant at Champaign Police Dept. and the said defendant did then and there refuse to give any booking information while the said defendant knew that John Schuffert was a police officer * * *."

The State cites *Migliore v. County of Winnebago* (1974), 24 Ill. App. 3d 799, 321 N.E.2d 476, to argue that the defendant was obligated to answer the officer's booking questions. In *Migliore*, the officers requested the identity of the person upon whom they were attempting to serve a subpoena. The person repeatedly refused to disclose his identity and was arrested. At the station, the person was booked and finally gave the officers his name and address. The appellate court found that the police were under a legal duty to serve the subpoena and that the performance of their duty included determining the identity of the person sought to be served. The court also held that Migliore, upon being informed of the subpoena, was under a legal duty to give the officers his name so as not to evade the service of process.

We find *Migliore* is unpersuasive. *Migliore* is a civil matter involving the evasion of the court's process. The officers in *Migliore* were under a court order and had a statutory duty to serve the subpoena and this included determining the identity of the person they were serving. The present case is a criminal matter involving the issue of whether the defendant's refusal to provide booking information amounts to the crime of obstructing a police officer. Despite Officer Schuffert's admonitions to defendant that defendant was required by law to answer booking questions, we know of no law which requires the defendant to provide booking information. After arrest, an accused has a right to remain silent (Ill. Rev. Stat. 1977, ch. 38, par. 103—2), and he has a statutory right to make a reasonable number of telephone calls to his family or attorney within a reasonable time after his arrival at the first place of custody (Ill. Rev. Stat. 1977, ch. 38, par. 103—3).

■■ It is clear that *Miranda* warnings are not required for questions asked during the booking process:

"The preliminary questions asked an accused with respect to his name and address, which are part of the booking proceedings certainly do not amount to an interrogation in order to elicit incriminating testimony or admissions from the defendant." *People v. Fognini* (1970), 47 Ill. 2d 150, 152, 265 N.E.2d 133, 134, *cert. denied* (1971), 402 U.S. 911, 28 L. Ed. 2d 653, 91 S. Ct. 1389.

■■■ Nevertheless, the absence of and want of necessity for a warning does not mean that an accused's refusal to answer booking questions amounts to a crime. In *People v. Raby* (1968), 40 Ill. 2d 392, 398-99, 240 N.E.2d 595, *cert. denied* (1969), 393 U.S. 1083, 21 L. Ed. 2d 776, 89 S. Ct. 867, the supreme court set forth the standard for obstructing or resisting a police officer. The gist of the offense is resisting or obstructing the valid acts of a police officer. The terms:

" 'convey commonly recognized meanings. "Resisting" or "resistance" means "withstanding the force or effect of" or the "exertion of oneself to counteract or defeat". "Obstruct" means "to be or come in the way of". These terms are alike in that they imply some physical act or exertion. Given a reasonable and natural construction, these terms do not proscribe mere argument with a policeman about the validity of an arrest or other police action, but proscribe only some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties, such as going limp, forcefully resisting arrest or physically aiding a third party to avoid arrest.' [*Landry v. Daley* (N.D. Ill. 1968), 280 F. Supp. 938, 959.]"

According to the *Raby* standard, some physical act beyond mere argument is required—certainly mere silence is not enough.

However, the State cites *People v. Gibbs* (1969), 115 Ill. App. 2d 113, 253 N.E.2d 117, for the proposition that a physical act is not required. In *Gibbs*, two officers stopped a gang of youths allegedly involved in disorderly conduct. The boys were ordered to lean against a building and the officers began to search them. At that time, defendant came out of the building and told the boys that they didn't have to be searched, and that they should go inside the building where there were 35 to 40 other youths. As a result of defendant's exhortations, the officer lost control of the situation and were unable to identify the youths involved. Defendant's conviction of obstructing was upheld on appeal. The court reasoned that defendant's exhortations to resist the officers fell somewhere between mere argument and a physical act.

■■ Here, defendant did not commit a physical act to impede or obstruct the officer from an authorized act within his official capacity. The State points out that all police agencies must furnish arrest information to the Department of Law Enforcement (Ill. Rev. Stat. 1977, ch. 38, par.

206—5.) The officer's authorized act in the present case was to ask for the information in the booking process, and defendant did not obstruct that duty by refusing to answer; the officer was not entitled to compel an answer.

■■ It is undisputed that once one is placed under arrest he has the right to remain silent and that voluntary statements made by him are admissible in court. (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) It would be incongruent to say that one may remain silent and yet must provide "booking" information. It is not a crime for an accused to maintain an antagonistic and belligerent attitude. *People v. Flannigan* (1971), 131 Ill. App. 2d 1059, 267 N.E.2d 739.

■ We hold that it is also not a crime for an accused to lack appreciation for booking procedures. The refusal to provide such information does not amount to the crime of obstructing. Section 31—1 is written in general terms to cover a multitude of situations, but it does not cover the refusal of an accused to answer booking questions. Defendant's conviction is reversed.


Reversed.


REARDON, P. J., concurs.


Mr. JUSTICE MILLS, dissenting:

Confess I must to certain gnawing doubts and anxieties in this area of obstructing police officers in the execution of their required duties.

I am not at all convinced that the statutory right of silence extends to a refusal to answer routine and mundane questions involved in the purely administrative procedure of police station "booking." It occurs to me that in this context the Criminal Code and its protection of a right to remain silent goes for the jugular—not a mere capillary. Its obvious intent is to prevent self-incriminating utterances regarding criminal offense, and not· to thwart the performance of public officers in the legitimate, routine functions required by the duties that society has demanded of them.

Perhaps my uneasiness is somewhat manifested in the logical extension of the majority holding—in the pragmatic possibilities of what could occur if the practice of silence at the time of booking should become widespread. I mean not to herald the coming of the Apocalypse, but I visualize real and concrete problems with the efficient administration of justice if we become faced with a general practice or rule—rather than an exception—of individuals under arrest refusing to answer valid and proper questions of law enforcement officials.

Need I paint a word picture of the chaos that could follow? Even if

only a substantial percentage of the myriad annual arrests that occur remained silent and refused to answer booking questions, the requirements of efficient and expeditious justice imposed upon all those involved in its administration could be most seriously impaired. Law enforcement agencies and governmental entities are already hard pressed for funds, personnel, training, and equipment. The added burden of investigation and inquiry to identify and procure basic, otherwise innocuous and nonincriminating information about arrestees could well place upon society an absurd burden which could not only impede, but might well inflict a grievous wound to the process of justice.

The majority grasps tightly to *Raby* for its survival. But *Raby* merely lifted certain semantical definitions from *Landry*, and those definitions of "resisting" and "obstructing" so lifted were taken in a purely clinical and surgical manner—far from the context of the case at bench, or apart even from those confronted in *Raby* itself.

*Landry* was a three-judge Federal district court class action in which it was held that the obstructing statute "is designed to deter a person from resisting or interfering with the acts of law enforcement officials, simply on the basis of the person's own conclusion as to the impropriety of the act." (*Landry v. Daley* (N.D. Ill. 1968), 280 F. Supp. 938, 959.) The court then proceeded to merely quote the definitions of "resisting" and "obstructing" out of Webster's New International Dictionary (3d ed. 1964) and then read into those sterile recitals that "they imply some physical act or exertion."

The *Landry* court went too far to my view—it overreached and made a blanket assertion that strains logical imputation or ascription. (*Landry* was reversed by the U. S. Supreme Court on other grounds *sub nom. Landry v. Boyle* 401 U.S. 77, 27 L. Ed. 2d 696, 91 S. Ct. 758.)

Actually—as our sister court opined in *Gibbs*—the factual situation here was clearly "not contemplated" by the language in *Raby* as lifted from *Landry*. Just as *Gibbs* distinguished its facts from those in *Raby*, I too view the situation posited here as distinguishable. Although the run-of-the-mill, garden-variety resisting or obstructing scenario would involve a physical element, I do not see how that element can be required in the situation of silence and refusal to answer legitimate booking inquiries that do not in any way call for comment on elements of criminal acts or on the issue of guilt or innocence.

A mere glance at Annot., 44 A.L.R. 3d 1018 (1972) ("What Constitutes Obstructing or Resisting an Officer, in the Absence of Actual Force") demonstrates that courts across the land have gone in all directions on this question—depending on two factors: (1) the *wording* of the particular statute ("obstruct," "resist," "hamper," "impede," "hinder," etc.), and (2) the specific *facts* of the case (a person denying that a subject was present

in the house, advising others not to obey police, refusal of a trespasser to give his name so summons and complaint could be prepared, etc.).

The case before us presents a challenge of approach more than anything else. Can mere silence—standing mute—constitute obstruction of an officer in the performance of his duty? I conclude it can. A person's refusal to answer harmless and inoffensive questions asked by proper authorities—requisite to the proper, efficient, and expeditious function of police powers—can surely "resist" and "obstruct" as though physical acts in the ordinary sense were employed. The defendant's refusal here to answer interfered with and obstructed the officer in the performance of his duties as completely and effectively as if he physically touched or otherwise physically interfered with the officer.

Silence and refusal to answer is merely a negative, an absence or void of the physical act of answering. One is omission, the other commission. Thesis, antithesis. Diametric opposites. But they may accomplish the exact, identical result. And a police officer has been obstructed either way the loaf is sliced!

In short—silence can be equated with physical action or conduct when its function and purpose is to impede, hinder, resist or otherwise obstruct a police officer in the performance of his duty, including the pedestrian necessities of "booking" procedures.

I would affirm.