# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 03-1032

_____

| | | |
|---|---|---|
| Timothy Lawyer; Michael Lawyer, | * | |
| | * | |
| Plaintiffs - Appellants, | * | |
| | * | |
| | * | |
| v. | * | |
| | * | |
| City of Council Bluffs, a municipal | * | |
| corporation; | * | Appeal from the United States |
| | * | District Court for the Southern |
| Defendant, | * | District of Iowa. |
| | * | |
| John Clark, individually and in his | * | |
| official capacity as a Council Bluffs | * | |
| police officer; Dan Newby, individually | * | |
| and in his official capacity as a Council | * | |
| Bluffs police officer, | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: December 12, 2003

Filed: March 26, 2004

_____

Before LOKEN, Chief Judge, MELLOY and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Timothy and Michael Lawyer appeal the district court's[1] grant of summary judgment in favor of police officers John Clark and Dan Newby in this lawsuit arising from a traffic stop in Council Bluffs, Iowa. We affirm.

I.

On March 26, 1999, at approximately 2:24 a.m., Officer John Clark of the Council Bluffs Police Department stopped Michael Lawyer for driving 85 miles per hour in a 55 mile-per-hour zone. The encounter was videotaped with audio from Officer Clark's police cruiser, leaving many of the facts in this case undisputed. Michael, then age 17, was driving with his 21-year-old brother, Timothy Lawyer, in the passenger seat. The siblings were traveling east along Interstate 80 while going home to Wisconsin after a ski trip in Colorado.

After stopping the car, Clark approached on the passenger side of the vehicle. He asked to see Michael's license, registration, and proof of insurance. As he shined his flashlight inside the car, he saw Timothy zip up a small red pouch and place it in the glove compartment. When Clark asked Timothy, "just out of curiosity," what was in the bag, Timothy replied that it was nothing important. Clark asked Timothy whether he would "mind if I take a look at it," and Timothy replied that he would "rather not" show the bag to Clark. Clark then stated repeatedly that the contents of the bag "looked like drug paraphernalia." Timothy asked Clark what kind of drug paraphernalia he thought he had seen in the bag, but at that time, Clark specifically identified only an Altoids container. Altoids are mint candies available in a small, rectangular metal container. In his police report prepared after the incident, Clark wrote that he also had observed in the pouch what he thought was a marijuana pipe.

_____

[1]The Honorable Ross A. Walters, Chief United States Magistrate Judge for the Southern District of Iowa.

After twice requesting that Timothy permit Clark to look in the bag, Clark eventually commanded Timothy, "Hand me the bag." When Timothy continued to refuse, Clark said, "we can do it the easy way, or the hard way." When Timothy still would not allow access to the bag, Clark demanded that Timothy exit the vehicle. He repeated his command several times over approximately a ten second period, but Timothy did not comply. Clark then stated that he would "start spraying pepper spray into the car," and again demanded that Timothy exit the vehicle.

At this point, Clark reached over and opened the passenger side door. He told Timothy, "It's entirely up to you. Open it up." Timothy then removed the red pouch from the glove compartment, and emptied its contents. The bag contained only candy, including the Altoids container that Clark had identified. One of the brothers explained that the contents included various types of candy: Sour Patch Kids, Winterfresh gum, and Fruit Roll-Ups.

Officer Dan Newby arrived at the scene during the encounter between Clark and Timothy. Following Timothy's emptying of the pouch, Clark returned to his patrol car to write Michael a citation for speeding and to confer with Officer Newby. When Clark finished filling out the citation, he placed it on the hood of his police cruiser. Clark approached the driver's side window of the Lawyer vehicle. He asked Michael to exit the vehicle and sign the citation on the hood of his patrol car, where he could be filmed by the officer's video camera. Michael refused to get out of his vehicle, stating that he was cold, he did not want to be filmed, he was afraid of the traffic, and he felt threatened by Clark.

Clark tried to explain to Michael that he would be arrested if he did not sign the citation. Clark explained that each person he cited was required to exit his or her vehicle to sign the ticket. Michael asserted to Clark on several occasions that he wanted to sign the citation, but did not want to exit his vehicle to do so. Clark continued to attempt to explain to Michael the possibility of arrest if he did not get out and sign the ticket. During this period, Clark was interrupted numerous times by

Michael and by Timothy, who was "counseling his brother not to leave the car." (Brief of Appellants at 19). Newby shortly informed Clark that the officers had received permission from their superior to arrest Michael for not signing the ticket.

At this point, Clark told Michael that he was under arrest, and asked Michael to step out of the vehicle. Michael did not exit. Clark tried the door handle, but found that the door was locked. Clark and Newby asked that the door be unlocked at least nine times, but the door remained locked. Thereafter, Clark reached inside Michael's open window to unlock and open the door. Michael's window then began to roll up on Clark's arm. Newby stepped in to prevent the window from completely rolling up, and threatened to break the window. As Newby held the window, Clark reached for his pepper spray and began spraying inside the vehicle. Michael was sprayed first; the substance also hit Timothy in the face when Michael turned his head to avoid it.

The officers again demanded that the door be unlocked, after which both Michael and Timothy got out of the car through their respective doors. The Lawyers were placed on the ground and handcuffed. Clark informed the brothers that Michael was being arrested for "failure to sign the ticket for the speeding violation," and Timothy was being arrested for "interference." Michael and Timothy were both taken to the back of Clark's police cruiser. Pursuant to Council Bluffs police department policy, Officer Clark took the brothers to a local hospital to be examined and have their eyes washed out. Thereafter, the Lawyers were taken to a juvenile detention facility, where Michael was processed and released into the custody of Timothy. Timothy was released upon his signing of a citation for disobedience to a police officer and interference with official acts.

Timothy and Michael Lawyer brought suit against the City of Council Bluffs, Officer Clark, and Officer Newby, based on both federal and state law. The district court found that all of the Lawyers' claims arose out of three components of the traffic stop and subsequent events: the search of the red pouch, the arrests, and the use of

force by means of the pepper spray.  The district court granted summary judgment for the officers, as well as the City of Council Bluffs, on all counts.  The Lawyers appeal only the portion of the ruling relating to the two officers, alleging that the officers were not entitled to qualified immunity, and that summary judgment was improperly granted.

## II.

"Under the doctrine of qualified immunity, state actors are protected from civil liability when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sexton v. Martin*, 210 F.3d 905, 909 (8th Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A court engaged in a qualified immunity inquiry uses a two-step process.  First, the court asks, "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Second, if a violation is found, the court must determine whether, in "the specific context of the case," the right was clearly established.  *Id.*  For a right to be considered clearly established, the "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  We review a grant of summary judgment *de novo*, determining "whether the record, viewed in a light most favorable to the non-moving party, shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Earnest v. Courtney*, 64 F.3d 365, 366-67 (8th Cir. 1995).

## A.

The Lawyers argue that Clark violated their clearly established rights under the Fourth Amendment by searching the red pouch without sufficient justification.  The officers do not directly contest the district court's assumption that Timothy's emptying

of the pouch was a "search" for purposes of the Fourth Amendment. Although Clark did not physically empty the pouch, he did direct Timothy to produce or open the pouch before it was emptied. Citizens are expected to obey commands from law enforcement officers; indeed, Council Bluffs Ordinance 8.56.040 provides that "[n]o person shall wilfully fail or refuse to comply with any lawful order or direction of a peace officer," and a violation constitutes a misdemeanor. Thus, actions taken in response to a demand under color of authority may constitute a search, even where the officer conducts no physical search. *United States v. Conner*, 127 F.3d 663, 666 (8th Cir. 1997). While it could be argued that Timothy's decision to open the pouch rather than comply with Clark's lawful command that he exit the vehicle amounted to voluntary consent by Timothy, we believe there is a genuine issue of fact whether a reasonable officer would have believed Timothy's action to be a response to Clark's commands (and thus a search) or voluntary consent. *See Pace v. City of Des Moines*, 201 F.3d 1050, 1053 (8th Cir. 2000). Accordingly, we proceed with our analysis on the assumption that Timothy's emptying of the pouch constituted a "search."

The Lawyers challenge the district court's conclusion that Clark had probable cause to search the pouch. The district court relied on Clark's statement in his police report, which was incorporated into his affidavit in support of the motion for summary judgment, that he believed he saw in the pouch "a small, long multi-colored object that [he] identified as a marijuana pipe." The court observed that Clark's police report was "not controverted by affidavit or otherwise," and concluded that the observations reported therein, together with Timothy's behavior during the encounter, justified a search of the pouch.

The brothers do not address directly either Clark's statement that he thought he had seen a marijuana pipe in the pouch, or the district court's conclusion that Clark's police report was not controverted. They argue implicitly that Clark's report is not credible, and that Clark's credibility is a genuine issue of fact for trial. The Lawyers note that Clark never mentioned any incriminating evidence, such as a marijuana pipe, during his encounter with Timothy at the vehicle or his contemporaneous

discussions with fellow officers at the scene. They argue that we should consider only the objects that Clark mentioned at the scene in determining whether there was probable cause to search the pouch.

We reject the Lawyers' contention because they did not properly question the credibility of Clark's police report in the district court. Defendants' statement of material facts in support of their motion for summary judgment alleged that Clark thought the red pouch contained drug paraphernalia, and incorporated by reference Clark's description of the marijuana pipe in his police report. The Lawyers' response to Clark's statement of fact was this: "Plaintiff qualifies Defendants' assertion that Defendant Clark 'thought' he observed drug paraphernalia. Defendant Clark affirmatively stated numerous times during the stop that he 'saw' drug paraphernalia. [citation to videotape]." The Lawyers' response to the statement of material facts never contested the essential fact that Clark "saw," or "thought" he saw, a marijuana pipe. Under its governing local rule,[2] the district court was thus entitled to deem that

_____

[2]Local Rule 56.1(b) for the Northern and Southern Districts of Iowa provides, in pertinent part, with emphasis added:

> A party resisting a motion for summary judgment must . . . file . . . the following:   . . .
>
> A response to the statement of material facts, . . . in which the resisting party expressly admits, denies, or qualifies each of the moving party's numbered statement of fact . . . .
>
> A response to an individual statement of material fact that is not expressly admitted must be supported by references to those specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits that support the resisting party's refusal to admit the statement, with citations to the appendix containing that part of the record. *The failure to respond, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact.*

fact admitted in resolving the motion for summary judgment. *See Northwest Bank & Trust Co. v. First Illinois Nat'l Bank*, 354 F.3d 721, 724-25 (8th Cir. 2003). Once it is accepted that Clark reasonably thought he saw a marijuana pipe in the red pouch, then there was probable cause to search the pouch, even though Clark turned out to be mistaken. *See Seiner v. Drenon*, 304 F.3d 810, 812 (8th Cir. 2002); *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999); *cf. Hill v. California*, 401 U.S. 797, 803-04 (1971). We therefore reject the Lawyers' claim that the emptying of the pouch violated the Fourth Amendment.

B.

The Lawyers presented four claims regarding alleged use of excessive force by the officers: a federal claim under 42 U.S.C. § 1983 for alleged violation of their rights under the Fourth and Fourteenth Amendments, and three state-law claims alleging negligence, assault and battery, and intentional infliction of emotional distress. We affirm the district court's grant of summary judgment for the appellees on all of these claims.

A law enforcement officer may order the driver out of a vehicle during a lawful traffic stop. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1997). In this case, Officer Clark directed Michael to get out of his vehicle to sign the citation. Michael refused this lawful command, leading Clark to attempt to open the door, only to find it locked. Michael ignored numerous requests that the doors be unlocked, at which point Clark reached inside the vehicle through Michael's open window to unlock and open the door. When he attempted to do so, the window began rolling up. Although the Lawyers allege that Clark inadvertently rolled up the window, the district court found that the brothers failed to present any evidence to support that claim.

Whatever the cause of the window rising, it was objectively reasonable for Clark to believe that he was in immediate danger, as he faced the possibility that he could be dragged down the road with his arm trapped in the window if the vehicle

-8-

began to move. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). Judging this situation "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," *id.* at 396, we agree with the district court that the use of pepper spray against Michael was objectively reasonable.

The Lawyers claim separately that Clark used excessive force when he hit the passenger, Timothy, with pepper spray. We are not persuaded. There is no evidence to suggest that Clark intentionally targeted Timothy for the application of pepper spray. Clark submitted evidence that Timothy was hit accidentally when Michael moved his head, and the Lawyers have not disputed this account. The Lawyers would have us hold that police officers are not allowed to administer pepper spray inside a vehicle when it is occupied by more than one person, because it is "foreseeable" that non-offending parties may be affected. This is not the law, and we decline to announce such a rule now. Such a restriction would preclude an officer from protecting himself in dangerous situations. Accordingly, the district court properly granted summary judgment for the officers on Timothy's claim of excessive use of force.

C.

With respect to their arrests, the Lawyers asserted a § 1983 federal claim for violation of their Fourth and Fourteenth Amendment rights, as well as a state law claim for false arrest. We agree with the district court that appellees are entitled to summary judgment on these claims.

The arrest of Michael was lawful. In the context of a traffic stop, the Fourth Amendment permits a law enforcement officer to make a warrantless arrest if he has

probable cause to believe the arrestee has committed an offense. This authority extends even to cases involving minor offenses where the officer has the option of issuing a citation. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

Iowa law provides that a juvenile who refuses to sign a citation "without qualification" may be arrested. Iowa Code § 805.16(2). As noted, an officer may demand that a driver exit his vehicle during a lawful traffic stop. *Mimms*, 434 U.S. at 111. Michael refused Clark's lawful command to exit the vehicle for the purpose of signing the citation. Because Michael placed the condition of remaining in his own vehicle on the signing of the citation, his assent to signing was not "without qualification." Therefore, Officers Clark and Newby had probable cause to believe that Michael was subject to arrest for violation of the Iowa Code.

We agree with the district court that the officers are also entitled to summary judgment on claims relating to the arrest of Timothy. Iowa law allows peace officers to make warrantless arrests for "public offenses," which include municipal ordinances with a penalty of a fine or imprisonment. *See State v. Ceron*, 573 N.W.2d 587, 592 (Iowa 1997); Iowa Code § 804.7. Timothy was cited for interference with official acts and disobedience to a police officer, pursuant to Council Bluffs city ordinances. The arrest was lawful, however, if there was probable cause to believe Timothy had violated any applicable statute, even one not contemplated by the officers at the moment of arrest. *See, e.g., Arnott v. Mataya*, 995 F.2d 121, 124 n.3 (8th Cir. 1993); *McNeely v. United States*, 353 F.2d 913, 918 (8th Cir. 1965).

The district court held that Timothy's conduct was within the scope of the city ordinance prohibiting interference with official acts, Council Bluffs Ordinance 8.56.045, and Iowa Code § 719.1, which covers the same subject. After oral argument before this court, appellants furnished documents purporting to show that a city ordinance entitled "Interference with official acts" was repealed on February 5, 1995, prior to the traffic stop in this case, and that the ordinance on which the district court relied was not enacted until August 23, 1999, some five months after the

-10-

traffic stop.[3]  Assuming the city ordinance was not in effect at the time of the arrest, the actions of the officers were lawful nonetheless if there was probable cause to believe that Timothy had violated the similar Iowa statute prohibiting interference with official acts.  Accordingly, we turn to that provision.

Iowa Code § 719.1(1) says a person commits the offense of interference with official acts if he knowingly "resists or obstructs" the authorized acts of a peace officer, but the Code excludes "verbal harassment" other than physical threats from the definition of interference.  *See* Iowa Code § 719.1(3).[4]  The parties thus debate whether Timothy's conduct -- orally urging Michael to refuse a lawful command by Clark to exit the vehicle -- amounts to "resist[ance]" or "obstruct[ion]" of the officer, or merely "verbal harassment."

"The purpose of criminalizing conduct that interferes with official police action is to enable officers to execute their peace-keeping duties calmly, efficiently, and without hindrance."  *State v. Buchanan*, 549 N.W.2d 291, 294 (Iowa 1996).  The key question is whether the officer's actions were hindered.  *Id.*  One may "resist" an officer under the Iowa statute without using physical force.  *See State v. Donner*, 243 N.W.2d 850, 854 (Iowa 1976); *State v. Brecunier*, 564 N.W.2d 365 (Iowa 1997) (upholding conviction for "resisting" officer under Iowa Code § 719.1 where defendant shined flashlight into officer's eyes to blind him, and hid gun for which

---

[3]Council Bluffs Ordinance 8.56.045, as furnished to the court by appellees, reads, "A person who knowingly resists, interferes or obstructs anyone known by the person to be a peace officer . . . commits a simple misdemeanor."

[4]Iowa Code § 719.1(1) reads in pertinent part: "A person who knowingly resists or obstructs anyone known by the person to be a peace officer . . . in the performance of any act which is within the scope of the lawful duty or authority of that officer . . . commits a simple misdemeanor."  Iowa Code § 719.1(3) provides : "The terms 'resist' and 'obstruct', as used in this section, do not include verbal harassment unless the verbal harassment is accompanied by a present ability and apparent intention to execute a verbal threat physically."

-11-

officers were looking). Though still subject to the limitation of Iowa Code § 719.1(3), the term "obstruct" is considered broader than "resist," and "includes putting obstacles in the path of officers completing their duties." *State v. Hauan*, 361 N.W.2d 336, 339 (Iowa Ct. App. 1984). While the Iowa courts have said that the use of actual or constructive force is sufficient to support a violation of § 719.1, *Donner*, 243 N.W.2d at 854; *State v. Turk*, 595 N.W.2d 819, 822 (Iowa App. 1999), we have found no case holding that the use of such force is *required* to establish a violation. Only one published Iowa case even mentions the statutory exclusion of § 719.1(3), and it does not inform us about the scope of the term "verbal harassment." *See State v. Smithson*, 594 N.W.2d 1, 3 (Iowa 1999) (declining to reach whether defendant engaged in resistance or obstruction when, in defiance of a police order to turn down the volume of an outdoor concert, he led the crowd in a chant against the police department).

We conclude that there was probable cause to believe that Timothy's conduct violated the Iowa statute. His efforts to cause Michael to defy Clark's order "obstructed" the officers by "putting obstacles in the paths of officers completing their duties," *Hauan*, 361 N.W.2d at 339, and hindering their efforts toward an orderly conclusion of the traffic stop. *Cf. State ex rel. Bailey v. City of West Monroe*, 418 So.2d 570, 574 (La. 1982) (arrest for resisting officer was lawful where mother instructed daughter to refuse officer's lawful command that daughter provide identification); *People v. Gibbs*, 253 N.E.2d 117, 119-21 (Ill. App. 1969) (upholding conviction for obstructing officers in performance of duties where defendant advised arrested suspects that police had no right to search them, and told suspects to enter building so police could not search without a warrant, thus frustrating ability of officers to complete arrests); *People v. Cooks*, 58 Cal. Rptr. 550, 551-53 (Cal. App. Dep't Super. Ct. 1967) (where defendant urged suspect not to provide identification to police officer who was searching for suspect in a robbery, defendant could be prosecuted constitutionally under statute that punishes one who wilfully resists, delays, or obstructs public officer). Timothy's actions contributed to Michael's refusal to leave the car, and that refusal prevented the officers from following their ordinary

-12-

and lawful procedure for issuing a speeding citation to Michael. The practical effect of Timothy's conduct was no different than if he had physically restrained Michael from exiting the car.

We do not believe Timothy's conduct was "verbal harassment." Timothy's conduct did not involve taunting, criticizing, or leveling empty threats at the officers. Indeed, the "verbal" statements at issue were not even directed to the officers; they were aimed at influencing Michael to refuse a lawful command. We reject Timothy's argument that he did not violate the statute simply because Clark faced no imminent danger. While the statute provides that "verbal harassment" of the officers violates the statute only if it is "accompanied by a present ability and apparent intention to execute a verbal threat physically," Iowa Code § 719.1(3), the statute does not say that *all verbal conduct* must portend imminent physical danger to be "obstruction" of an officer in violation of the statute. We suspect, for example, that giving a false name to an officer, *see Simeon v. State*, 778 So.2d 455, 456 (Fla. Dist. Ct. App. 2001); *State v. Latimer*, 687 P.2d 648, 652 (Kan. 1984), or providing an oral warning to a suspect so that he may hide evidence or avoid apprehension, *see Porter v. State*, 582 So.2d 41, 42 (Fla. Dist. Ct. App. 1991), may well constitute a violation of § 719.1, even though the conduct is entirely "verbal" and non-threatening. Accordingly, we hold that Timothy's arrest was lawful because there was probable cause to believe he had violated Iowa Code § 719.1.

Even if an Iowa court were to conclude later that conduct such as Timothy's does not violate the statute, the officers are entitled to qualified immunity. Police officers are not expected to parse code language as though they were participating in a law school seminar, and a reasonable officer certainly could believe that Timothy's earnest efforts to induce Michael's defiance of a lawful command "obstructed" the officer's duties. Given the lack of detailed judicial guidance on the interplay among the statutory terms "obstruct," "resist," and "verbal harassment," we conclude that the arrest of Timothy did not violate clearly established law. *See Mahers v. Harper,* 12 F.3d 783, 786 (8th Cir. 1993) (affirming the district court's grant of summary

judgment in favor of prison guards, where guards' interpretation of a prison rule was "not implausible," and no court had yet interpreted the rule).

We affirm the judgment of the district court.

_____