THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee; v. DENNIS KOESTER et al., Defendants-Appellants.

(Nos. 60577-78 cons.;

First District (5th Division)—July 11, 1975.

James J. Doherty, Public Defender, of Chicago (Mary Jane Theis and Thomas F. Finegan, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Raymond J. Prosser, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

Defendants were found guilty, after a bench trial, of the charge of obstructing service of process. (Ill. Rev. Stat. 1973, ch. 38, par. 31—3.) Both were sentenced to periodic imprisonment on the work-release pro-

gram—Kellas for 90 days and Koester for 60 days. On appeal, they contend the evidence failed to establish their guilt beyond a reasonable doubt.

At trial, Mary Finnegan testified that on the morning of August 9, 1973, she swore out a complaint against Gary Kellas and Frank Even on the charge of disorderly conduct. That afternoon she was in her apartment, the rear porch of which overlooks the back yard of the Troman home at 5832 North Wayne, in Chicago, and she observed Even run in the back door of the Troman home, with the police in pursuit. The police tried to get into the house but were denied admission. Kellas, who was on the back porch of the Troman home, began to fight with the police, and he was arrested. Koester was also fighting with the police, and he too was placed under arrest.

Earl Rosen, a Chicago police officer, testified that on the afternoon of August 9, 1973, he and his partner, Michael Chasen, were on routine patrol when he observed Even. The previous day he had been informed by Sergeant Westerhome that there was an arrest warrant outstanding for Even on the charge of disorderly conduct. Rosen testified that his partner yelled to Even, who ran to the rear of a house on North Wayne. Rosen called for assistance, and a short time later 8 to 10 other police officers arrived and surrounded the house. Rosen then went to the front of the house, and he had no knowledge of what occurred at the rear of the premises. He also testified that he did not have and had never seen a copy of the arrest warrant.

Michael Chasen, a Chicago police officer, testified that on the afternoon of August 9, 1973, he and Rosen were in the 5800 block of North Wayne Avenue when they observed Even. They stopped their squad car and called for Even to halt, but Even ran into the house at 5832 North Wayne. That morning he had been told by his sergeant that there was an arrest warrant outstanding for Even. Chasen testified further that after other police officers arrived, he informed the people in the home that he had a warrant for Even's arrest and that he had seen him enter the home. When Chasen tried to get to the back door, defendants and a Mr. Lauderdale prevented his entrance. He told them he had seen Even enter the house and that there was a warrant for Even's arrest. He was refused entry, however, by Lauderdale, who was placed under arrest. Chasen, with Officer McGovern, again tried to reach the rear door, and when defendant Kellas blocked the way, he was arrested. When Chasen next tried to enter the house, he was blocked by defendant Koester and several small children. Koester refused to move, and when he began fighting with Sergeant McGovern, he was placed under arrest. Several days after the arrest of Even, Chasen checked with the central warrant section of

the Chicago Police Department and was informed that a warrant had been issued for Even's arrest.

Bernard McGovern, a Chicago police sergeant, testified that on August 9, 1973, he received a call and proceeded to 5832 North Wayne where, after having a conversation with Officers Chasen and Rosen, he and Chasen went up the stairs to the rear door and attempted to gain entrance to the house through the rear door. He informed the persons in the house that other officers had just seen a man wanted on a warrant run into the house and that he wished to enter and arrest that man. Lauderdale refused to let him enter and was placed under arrest. When he went back up the stairs, he was blocked by defendant Kellas, who was told he would be placed under arrest after a scuffle with police officers. McGovern again attempted to gain entrance but was blocked this time by defendant Koester and several children. Koester was also warned that if he did not move, he would be placed under arrest and, when he refused to do so, he also was arrested after a scuffle with the police officers.

Catherine Smith testified that on the afternoon of Auugst 9, 1973, she was on the back porch of Mrs. Finnegan's apartment, which overlooks the rear of the Troman home, and she observed several police officers trying to enter the rear door of the home. When Lauderdale blocked their path, he was placed under arrest. The police again attempted entrance, but their path was blocked—first by Kellas and then by Koester, who were both arrested.

Frank Even testified that he was not at any time at the Troman home at 5832 Wayne on August 9, 1973. On the afternoon of that day, he was in his home located at 1530 West Thomas, in Chicago. Two days later he went to the 20th District police station, where he told the sergeant that he wished to turn himself in, because he had been informed there was a warrant outstanding for his arrest. The sergeant told him that there was no warrant on file; nevertheless, on the next day he was arrested on the charge by two detectives at his home.

Mary Troman testified that she lives in the home at 5832 North Wayne and that on August 9, 1973, at approximately 4 p.m., Officers Rosen and Chasen came to her home and asked if they could enter. They informed her that they were in pursuit of Frank Even. She told the officers that they could not enter without a search warrant and that Even was not in her home at that time. The police officers subsequently forced their way in but did not find Even. During the incident, the police officers placed Gary Kellas, Dennis Koester and Lauderdale under arrest.

Margot Sinnaeve testified that in the afternoon of August 9, 1973, she was in the Troman home when 15 to 20 police officers arrived in pursuit of Frank Even. As they attempted to enter the house, Sergeant McGovern

ordered Kellas to get out of the way. As Kellas began to move, he was pushed to the ground by some police officers and then placed under arrest. Koester was standing approximately 5 feet from the rear stairs when the police officers ordered him out of the way. When he replied that it was private property and that he did not have to move, he was arrested.

Gary L. Kellas, defendant, testified that on the afternoon of August 9, 1973, when he arrived at the Troman home, he observed Officers Chasen and Rosen searching Koester's car. He went to the front porch of the home and did not interfere with the officers in any way. The officers then went to the rear of the house and said, "Send Frank out." They did not say that they had an arrest warrant, and at no time did they produce one. The officers ordered Kellas to move from the rear door and, as he started moving, he was pushed to the ground and placed under arrest.

Dennis Koester testified that on August 9, 1973, at approximately 4:30 p.m., he was driving his car when he was stopped by Officers Rosen and Chasen near the Troman home. They searched his automobile, and when they finished he walked to the Troman home. The officers then entered the rear yard of the home, saying something about Frank Even, and they ordered the people in the home to open the door. Kellas and Lauderdale were told to get away from the house and, as they started to walk away, Kellas suddenly fell to the ground. Both Kellas and Lauderdale were then arrested. Koester was approximately 5 to 10 feet away from the house when Sergeant McGovern pushed him and ordered him off the property. When he told McGovern he had no right to tell him to get off the property, several other officers grabbed him and placed him under arrest.

OPINION

Defendants argue that the evidence was insufficient to establish their guilt beyond a reasonable doubt. They were charged with the offense of obstructing service of process in violation of section 31—3 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 31—3), which states:

> "Whoever knowingly resists or obstructs the authorized service or execution of any civil or criminal process or order of any court commits a Class B misdemeanor."

The Committee Comments concerning this section (Ill. Ann. Stat. ch. 38, § 31—3, Committee Comments (Smith-Hurd 1970) state at page 740:

> "This offense was separated from that of resisting a peace officer (previously combined in ch. 38, § 499) because of the separate governmental authority sought to be protected. Under section 31—1 it is the authority of the duly appointed peace officer which must not be flouted or obstructed; in section 31—3 it is the au-

thority of the judiciary represented by its judicial process which must not be obstructed."

Officers Chasen and Rosen each testified that his sergeant had informed him that an arrest warrant had been issued for Even. Chasen also testified that a few days after the arrest of defendants, he called the police warrant section and confirmed the existence of an arrest warrant. Frank Even testified that he tried to turn himself into the police, having heard that a warrant had issued, but was told there was no warrant. He admitted, however, that he was arrested 3 days later. The alleged arrest warrant was not physically produced in the trial court.

Defendants contend that the facts, as testified to by the State's witnesses, at most could be characterized as only an obstruction to the performance by the police officer of his duties under section 31—1 (Ill. Rev. Stat. 1973, ch. 38, par. 31—1) and was not an obstruction of the service of process under section 31—3: They argue that an essential element of the offense under section 31—3 is the existence of a valid warrant, which was not established here by the hearsay testimony of Officers Chasen and Rosen.

■■ We are in general agreement with defendant's argument that the testimony of Officers Chasen and Rosen concerning their knowledge of the arrest warrant was hearsay which, if challenged, should be stricken because it was offered to establish the existence of the warrant. (*Goshey v. Dunlap,* 16 Ill.App.3d 29, 305 N.E.2d 648.) However, hearsay testimony, when not objected to, as was the case here, is to be considered and given its natural probative effect as if it were in law admissible. *Town of Cicero v. Industrial Com.,* 404 Ill. 487, 89 N.E.2d 354; *People v. McCoy,* 44 Ill.2d 458, 256 N.E.2d 449.

■■ Thus, although the arrest warrant was not produced in court, we believe that the unchallenged testimony of Officers Chasen and Rosen, when considered with the testimony that a complaint had been signed by Mrs. Finnegan and that Frank Even was actually served with a warrant 3 days later, was sufficient to establish the existence of a valid arrest warrant.

■■ Defendants also contend that the testimony of the State's witnesses was insufficient to establish their guilt beyond a reasonable doubt. They point out the personal involvement of two witnesses, Mrs. Finnegan and Mrs. Smith, who were members of a neighborhood group organized to fight crime and who, prior thereto, had a number of disagreements with the Tromans and the young people who spent time at the Tromans' home. It was there that the arrests of defendants occurred and Mrs. Finnegan, who had filed the complaint against Frank Even, had previously filed a

complaint against defendant Kellas, who was also suing her in a Federal action for violation of his civil rights.

These two women also testified they worked closely with the police in that district, and defendants suggest that there was more than a casual police interest in the occurrence, in view of the prior warrantless search of Koester's person and car and the unusual circumstances attending their arrests.

In light thereof, defendants maintain that the State's witnesses were "contradictory, and prejudiced"; whereas, "the defense witnesses uniformly testified that the defendants did not obstruct the police officers," and they argue that their conviction cannot stand on a "record filled with conflicts and confusion of the State's witnesses."

The question presented is essentially one of credibility of the witnesses, which is determined by the trier of fact. (*Bauske v. City of Des Plaines*, 13 Ill.2d 169, 148 N.E.2d 584.). This court will not substitute its judgment for that of the trial court on a matter of the credibility of witnesses and the weight to be given their testimony unless the evidence in its entirety was so unsatisfactory as to warrant a reasonable doubt of guilt. *People v. Daily*, 41 Ill.2d 116, 242 N.E.2d 170; *People v. Alexander*, 11 Ill.App.3d 782, 298 N.E.2d 355.

Here, from our examination of the record, although there is a conflict in the testimony of the witnesses, we do not believe the proof was so unsatisfactory as to raise a reasonable doubt of defendants' guilt.

For the reasons stated; the judgment of the trial court is affirmed.

Affirmed.

BARRETT, P. J., and LORENZ, J., concur.