THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERESA RAMIREZ, Defendant-Appellant.

Fifth District   No. 5—85—0699

Opinion filed December 30, 1986.

Randy E. Blue and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Kathleen Alling, State's Attorney, of Mt. Vernon (Kenneth R. Boyle, Stephen E. Norris, and Kim G. Noffke, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

After a trial, a Jefferson County jury found defendant guilty of burglary, possession of burglary tools, conspiracy to commit burglary, and obstructing a peace officer. Defendant appeals.

This case concerns the burglary of the Byrd-Watson Drug Store at Times Square Mall in Mt. Vernon on the morning of April 13, 1985. Police officers answered a silent alarm at the store. The first officer arrived about 4:25 a.m. After the store owner unlocked the outside door, the officers entered, finding and arresting Ronald Novak and Elizabeth Ramirez. The officers also found a hole cut into the roof of the store and found various tools near the hole. A detective sergeant trained in arson investigation testified that in his opinion it would have taken at least a couple of hours to cut that hole with the tools found.

Officer Charles Lamont testified that when he arrived at the scene there were about six vehicles on the parking lot. The parking lot served a 24-hour grocery store as well as the drug store. Lamont ran a license check on one of the cars, a green Maverick, which he learned was not registered locally but rather to a Skokie address. He found no other

cars in the parking lot not registered in the Mt. Vernon area. The windows of the Maverick were open and a key was in the ignition, though the car was not running. Lamont saw "two or three" purses inside. As Lamont looked in the Maverick, a man and two women (one of them defendant) left the grocery store and entered the vehicle. Lamont asked the three for identification. Defendant, the rear seat passenger, told him her name was Delores Bulbin or Bilbin. Lamont instructed the occupants of the Maverick to follow him to the police station.

The detective sergeant testified that at the police station defendant phoned an individual she identified as a Chicago police officer; she then gave her true name and Chicago address; Elizabeth Ramirez phoned the same individual. The sergeant testified he took tools from the trunk of the Maverick, including a box of ratchets and sockets, a disassembled hydraulic spreader, screwdrivers and pliers, and lengths of pipe suitable for slipping over a tool handle to increase leverage.

Kevin Trout testified as follows: He was the assistant manager in charge at the grocery store on the 11 p.m. to 7 a.m. shift on the morning in question. He never saw the man and two women in the Maverick together until about 5:30 or 6 when the police arrived. He did notice the man earlier in the store. Trout described him as very large and apparently "high" on drugs. Two women also came in, about 3:30. However, Trout could not identify the defendant at trial. The three did not buy groceries, just "piddly items ***, like cigarettes." Trout checked the parking lot during his shift for the protection of the employees' cars; he did not state how many times he checked the lot that night; except for the Maverick, he saw only the employees' cars; he did not see the man and two women in the parking lot until the police arrived, and nothing drew his attention to the Maverick until then.

Defendant did not testify and presented no evidence. After retiring, the jury sent a note to the judge requesting "Trout's testimony." The judge answered that he was unable to comply. The court instructed the jury regarding principles of accountability.

■ Defendant argues the evidence was insufficient to prove her guilty of burglary beyond a reasonable doubt. The question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267.) The proof of defendant's guilt was entirely circumstantial. To justify conviction, the facts must not only be consistent with the accused's guilt but must also be inconsistent with any reasonable hypothesis of innocence, or the facts

must so thoroughly establish the accused's guilt as to exclude every reasonable hypothesis of innocence. Here the prosecution had to establish that defendant aided or abetted Ronald Novak and Elizabeth Ramirez in the commission of the burglary. See *People v. Kostatinovich* (1981), 98 Ill. App. 3d 611, 614, 424 N.E.2d 864, 866.

■■ ■ The State relies on its showing of a "connection" between defendant and Elizabeth Ramirez, as shown by their common last name and their one proved common acquaintance in Chicago. There was no showing that defendant acted as a lookout for the burglars or was knowingly prepared to assist in their escape. There was no proof the burglars were ever in the Maverick, that the Maverick was in the parking lot continuously, that defendant knew a burglary was being committed, or even that defendant was acquainted with the burglars. Presence at the scene is not culpable, and knowledge that the crime is being committed does not constitute aiding or abetting. (*People v. Ivy* (1979), 68 Ill. App. 3d 402, 405, 386 N.E.2d 323, 324.) Since flight from the scene does not of itself prove guilt (68 Ill. App. 3d 402, 405, 386 N.E.2d 323, 325), it follows that defendant's failure to give her true name was not of itself proof of guilt.

■■ Cases cited to this court for comparison support our view that the instant evidence was insufficient. In each of the four cases next discussed, the conviction was reversed for insufficient evidence. In *People v. Thompson* (1975), 35 Ill. App. 3d 105, 340 N.E.2d 631, the defendant was arrested with a man carrying stolen property; the court concluded their presence together, even with the defendant's knowledge that the crime had been committed, was not alone sufficient. In *People v. Kostatinovich* (1981), 98 Ill. App. 3d 611, 424 N.E.2d 864, a store proprietor identified defendant as one of a group of people who kept him occupied while someone stole from his desk. In *People v. Ivy* (1979) 68 Ill. App. 3d 402, 386 N.E.2d 323, the victim saw the defendant with his assailants just before the assault, and defendant left the scene in the car the assailants left in. In *People v. Wright* (1976), 43 Ill. App. 3d 458, 357 N.E.2d 224, the defendant, one of several passengers in a car, kept the service station attendant occupied while some of the others stole from the station. In the instant case, as in each of these four cases, the evidence established a strong suspicion that the accused knowingly acted as a lookout or a diversion or otherwise assisted the principal offender. However, suspicions and probabilities are not enough to convict. (*People v. Johnson* (1976), 43 Ill. App. 3d 428, 431, 356 N.E.2d 1373, 1375-76.) Defendant's conviction of burglary is reversed.

Defendant argues the evidence of her guilt of conspiracy was also

insufficient. Our conclusion that the burglary conviction cannot stand is essentially dispositive of the latter contention. There was no proof defendant knew a burglary was being committed, hence no proof she agreed to help commit it. See generally *People v. Foster* (1983), 99 Ill. 2d 48, 457 N.E.2d 405.

■ Defendant argues the evidence of her guilt of possession of burglary tools was insufficient. In light of what we already have said, we confine our consideration to the tools in the trunk of the Maverick. There was no proof that those tools were not common tools or that they were used in this burglary or any burglary. There was no proof that defendant knew those tools were in the trunk or that she had ever been in that car before. As we have said, there was insufficient proof that she knew a burglary was being committed. (See generally *People v. Janis* (1977), 56 Ill. App. 3d 160, 163, 371 N.E.2d 1063, 1066.) Defendant's conviction for possession of burglary tools is reversed.

■ Defendant argues she was not proved guilty beyond a reasonable doubt of obstructing a peace officer based on her giving an officer a false name. "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity" commits the offense of obstructing a peace officer. (Ill. Rev. Stat. 1985, ch. 38, par. 31—1.) Defendant argues giving a false name is not a physical act as is required to violate the obstructing statute. Our supreme court has concluded that the obstructing statute "[does] not proscribe mere argument with a policeman about the validity of an arrest or other police action" but rather proscribes "only some physical act" such as "going limp, forcefully resisting arrest or physically aiding a third party to avoid arrest." (*People v. Raby* (1968), 40 Ill. 2d 392, 402, 240 N.E.2d 595, 599, *cert. denied* (1969), 393 U.S. 1083, 21 L. Ed. 2d 776, 89 S. Ct. 867, quoting *Landry v. Daley* (N.D. Ill. 1968), 280 F. Supp. 938, 959.) *People v. Gibbs* (1969), 115 Ill. App. 2d 113, 253 N.E.2d 117, cited by the State, presents unusual facts on which verbal conduct was held to have violated the obstructing statute. We believe the instant case falls within the general rule stated in *Raby*.

For the foregoing reasons the judgment of the circuit court of Jefferson County is reversed.

Reversed.

KARNS, P.J., and HARRISON, J., concur.