THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES LEE MEISTER, Defendant-Appellant.

Fourth District   Nos. 4—96—0062, 4—96—0063 cons.

Opinion filed June 26, 1997.

338

Daniel D. Yuhas and Khalil Cox, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Following a jury trial in the circuit court of McLean County, defendant James Lee Meister was convicted of obstructing service of process (720 ILCS 5/31—3 (West 1994)) and criminal trespass to residence (720 ILCS 5/19—4 (West 1994)). Defendant challenges only his conviction for obstructing service of process. Defendant contends the evidence was insufficient to support his obstructing conviction because (1) he committed no physical act of obstruction as purportedly required by the statute and (2) no actual obstruction occurred. We affirm.

## I. BACKGROUND

At trial, on October 11, 1995, Deputy Richard Scott of the McLean County sheriff's department testified he received a telephone call

from defendant between 9:30 and 10:30 a.m. on February 21, 1995. Defendant stated a neighbor informed him the police had been going to his home at 1824 West Olive, Bloomington, Illinois (Olive residence), and defendant wanted to know the reason for the visits. Deputy Scott told defendant the officers possessed a subpoena to be served upon defendant's wife, Shannon Meister. Defendant then claimed Shannon no longer resided at that residence and said he believed Shannon was residing at an unknown address in Florida. Defendant stated he was being harassed by the officers and threatened to contact his attorney. Deputy Scott stated unless the department received solid information to the contrary, the department would continue to look for Shannon at the Olive residence.

Shortly after his conversation with defendant, Deputy Scott telephoned the Olive residence. Shannon answered. Deputy Scott told Shannon a subpoena had been issued for her to testify, an officer was standing by to serve the subpoena, and she needed to open the door. Deputy Scott then radioed Deputy John Foster.

Shortly after 10 a.m. on February 21, 1995, Deputy Foster received the call from Deputy Scott directing him to attempt service upon Shannon. Shannon answered the door and he served her with the subpoena. Deputy Foster made five prior attempts to serve the subpoena at the Olive residence. On one occasion, he observed a curtain move in a manner indicating someone was peeking from behind the curtain.

Veronica Gray, Shannon's mother, testified she had no knowledge her daughter ever lived in Florida. According to Gray, Shannon resided in Bloomington during February 1995, but Gray was unable to recall whether Shannon resided at the Salvation Army or at the Olive residence on February 21, 1995.

Shannon testified she and defendant separated in either the second or third week of February but she was unable to recall the date. Defendant stayed at the Olive residence, to which Shannon maintained a key. Shannon lied to defendant and told him she was relocating to Florida. On February 21, 1995, Shannon, who had not spoken with defendant since the separation, went to the Olive residence to gather some belongings without defendant's knowledge. After she received the subpoena, Shannon called her husband at work. Shannon returned to live at the Olive residence on either February 21 or 22, 1995.

Defendant testified when he and Shannon separated, Shannon informed him she was going to Florida to visit her grandfather and stepgrandmother, one of whom was ill. Shannon took her child, defendant's stepson, with her. After defendant asked a neighbor to

watch his residence because he believed Shannon might return, the neighbor telephoned defendant at work to inform him the police had been to his residence. From his place of employment, defendant contacted the police via telephone on two occasions regarding the police visits. During the conversations, when the police inquired how they could contact Shannon, defendant stated they should ask her mother. The police informed defendant they could go to his home at any time and, because of an earlier discussion with Gray, they would continue to look for Shannon there.

The jury found defendant guilty of obstructing service of process. Defendant filed a motion for a new trial, contending the trial court erred in denying his motion for a directed verdict because defendant's actions did not constitute a physical act as allegedly required by the statute. The trial court denied defendant's motion and sentenced defendant to 24 months' conditional discharge for both the criminal trespass and obstructing offenses. Defendant filed a timely notice of appeal. The appeals were consolidated for our review, but the defendant's brief challenges only the conviction for obstruction of service of process.

## II. PHYSICAL ACT

Defendant argues the State failed to prove him guilty beyond a reasonable doubt by failing to show defendant obstructed service of process by a physical act. The State maintains a physical act is not a prerequisite to prosecution under section 31—3 of the Criminal Code of 1961 (Code) (720 ILCS 5/31—3 (West 1994)) and, in the alternative, defendant's conduct sufficiently constituted a physical act.

■ We will not overturn a criminal conviction unless the evidence is so improbable or unsatisfactory it casts reasonable doubt on defendant's guilt. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276 (1985). When one challenges the sufficiency of the evidence, we will sustain a conviction if " 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277, quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979).

■ Section 31—3 of the Code provides the following:

"Whoever knowingly resists or obstructs the authorized service or execution of any civil or criminal process or order of any court commits a Class B misdemeanor." 720 ILCS 5/31—3 (West 1994).

The General Assembly separated the offense of obstructing service of process from the offense of obstructing a peace officer. *People v. Koester*, 31 Ill. App. 3d 28, 31-32, 332 N.E.2d 755, 757-58 (1975), cit-

ing Ill. Ann. Stat., ch. 38, par. 31—3, Committee Comments, at 740 (Smith-Hurd 1970). Because sections 31—1 (720 ILCS 5/31—1 (West 1994)) and 31—3 of the Code share the same origin, an examination of section 31—1 is beneficial for our review. See *Silverman v. Ballantine*, 694 F.2d 1091 (7th Cir. 1982). Section 31—1(a) of the Code provides, in part: "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer *** commits a Class A misdemeanor." 720 ILCS 5/31—1(a) (West 1994).

In *People v. Raby*, 40 Ill. 2d 392, 240 N.E.2d 595 (1968), the Supreme Court of Illinois adopted the language of an earlier federal case that interpreted section 31—1 for the purpose of determining whether the resisting-arrest provision was vague or overly broad:

> " ' "Resisting" or "resistance" means "withstanding the force or effect of" or the "exertion of oneself to counteract or defeat". "Obstruct" means "to be or come in the way of". These terms are alike in that they imply some physical act or exertion. Given a reasonable and natural construction, these terms do not proscribe mere argument with a policeman about the validity of an arrest or other police action, but proscribe only some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties, such as going limp, forcefully resisting arrest or physically aiding a third party to avoid arrest.' " *Raby*, 40 Ill. 2d at 399, 240 N.E.2d at 599, quoting *Landry v. Daley*, 280 F. Supp. 938, 959 (N.D. Ill. 1968), *rev'd on other grounds* sub nom. *Boyle v. Landry*, 401 U.S. 77, 27 L. Ed. 2d 696, 91 S. Ct. 758 (1971).

In the review of convictions of obstructing a peace officer, appellate courts have worked within the "mere[ly] argument" and "physical act" dichotomy set forth in *Raby* and *Landry*. See, *e.g., People v. Hilgenberg*, 223 Ill. App. 3d 286, 289, 585 N.E.2d 180, 183 (1991); *People v. Ramirez*, 151 Ill. App. 3d 731, 735, 502 N.E.2d 1237, 1239-40 (1986); *People v. Weathington*, 76 Ill. App. 3d 173, 176, 394 N.E.2d 1059, 1061-62 (1979); *People v. Conner*, 42 Ill. App. 3d 234, 238-39, 355 N.E.2d 662, 665-66 (1976). Courts have encountered some difficulty in attempting to place a defendant's conduct squarely within either "mere argument" or "some physical act." See, *e.g., People v. Gibbs*, 115 Ill. App. 2d 113, 253 N.E.2d 117 (1969); *Conner*, 42 Ill. App. 3d 234, 355 N.E.2d 662.

In *Gibbs*, while police were conducting a search of 10 to 12 teenage boys, the defendant exited the Woodlawn Organization office (office) and declared the officers were violating the boys' constitutional rights. Defendant informed the boys they should enter the office where, he opined, the police would be unable to conduct their search absent a valid warrant. When defendant left the scene, seven or

eight of the boys followed him into the office. Police entered the office and learned the boys had joined a group of approximately 35 to 40 others and they were unable to finish the arrest. The defendant informed the officers that, because he and the boys were on private property, they had no right to be in the office absent a warrant. The defendant failed to heed an additional warning he was interfering with police business and was arrested. *Gibbs,* 115 Ill. App. 2d at 115-16, 119, 253 N.E.2d at 118-19, 120.

The *Gibbs* court determined the language in *Landry* and *Raby* indicated the courts did not contemplate a situation where the actions of a defendant fall between "mere argument" with an officer and "some physical act." After concluding defendant's conduct went beyond merely arguing with the police, the court affirmed his obstructing-a-peace-officer conviction. *Gibbs,* 115 Ill. App. 2d at 117-19, 121, 253 N.E.2d at 119-20, 121.

In *Conner,* the evidence the jury believed showed the defendant approached within 10 to 15 feet of police officers who were arresting his brother, removed his jacket to reveal an empty shoulder holster, and threatened to kill the police officers if his brother was not released. After an unidentified man grabbed the defendant from behind, the defendant struggled and continued to threaten the officers. *Conner,* 42 Ill. App. 3d at 235-36, 355 N.E.2d at 663-64. Although defendant came into no physical contact with the police officers, the court determined his actions constituted more than mere words and thus amounted to obstruction under section 31—1 and *Landry* and *Raby. Conner,* 42 Ill. App. 3d at 238, 355 N.E.2d at 665.

Although apparently recognizing certain conduct may fall between the two extremes, the Supreme Court of Illinois has yet to determine such conduct is proscribed. See *People v. Weathington,* 82 Ill. 2d 183, 187, 411 N.E.2d 862, 864 (1980). Like *Gibbs* and *Conner,* this case involves a set of circumstances where the defendant went beyond merely arguing with the police but did not go as far as committing a physical act. Viewing the evidence in the case before us in the light most favorable to the prosecution, the facts show defendant intentionally *initiated* contact with the police in order to furnish false information regarding his wife's whereabouts. This contact was designed to mislead the officers and delay the performance of their duties. We find such conduct is proscribed by section 31—3.

■ We note an examination of whether a defendant's conduct as a whole amounts to obstructing service of process better reflects the purpose of section 31—3. We believe too much emphasis is often placed upon the *Raby* and *Landry* language. The *Raby* court interpreted section 31—1 and considered whether the section was

constitutional. Yet, here, we are considering whether conduct factually amounts to obstructing service of process. As the first district noted, the two offenses consist of different actions: "[R]esisting arrest is a physical act that necessarily involves a physical struggle. It does not potentially involve the broad range of actions that obstructing a peace officer can involve." *People v. Lauer*, 273 Ill. App. 3d 469, 474, 653 N.E.2d 30, 33 (1995) (distinguishing the two offenses for the purpose of determining the sufficiency of a complaint).

Although the *Landry* and *Raby* language concludes "obstruct-[ing]" implies a "physical act or exertion," *Lauer* demonstrates obstructing does not necessarily involve a physical struggle. The physical-implication conclusion drawn by the *Landry* and *Raby* courts is inconsistent with the *Lauer* decision but, more importantly, is also inconsistent with the General Assembly's use of the phrase "obstructing justice" in section 31—4. See 720 ILCS 5/31—4 (West 1994). In section 31—4(a), a nonphysical act, the provision of false information, is sufficient to "obstruct" justice or, in other words, "to be or come in the way of" justice.

Moreover, when considering obstructing service of process, the intentional, self-initiated provision of false information as to the identity or whereabouts of an individual could actually be a greater obstruction than if one simply physically stood between the server and the person to be served. We believe the General Assembly sought to protect the judicial process from such intrusion because the proper service of process depends upon the identity and location of the individual.

### III. ACTUAL DELAY

■ Defendant further argues the State failed to prove defendant's conduct actually obstructed the service of process. Defendant notes approximately 15 minutes following his telephone conversation with Deputy Scott, Shannon was served with the subpoena. The State argues *Silverman* demonstrates there exists no requirement for an actual delay. Even if an actual delay is required, the State argues defendant's conduct did hinder or delay the officers for at least a brief period.

Defendant failed to include this argument in his posttrial motion and has waived this issue for review. *People v. Enoch*, 122 Ill. 2d 176, 187, 522 N.E.2d 1124, 1130 (1988). His argument also fails on the merits.

In *People v. Dewlow*, 54 Ill. App. 3d 5, 6-7, 369 N.E.2d 270, 271 (1977), the first district reversed a conviction for obstructing a peace officer after it concluded defendant's behavior resulted in no actual

delay. According to *Landry* and *Raby*, however, section 31—1 proscribes " 'some physical act which imposes an obstacle which *may* impede, hinder, interrupt, prevent or delay the performance of the officer's duties.' " (Emphasis added.) *Raby*, 40 Ill. 2d at 399, 240 N.E.2d at 599, quoting *Landry*, 280 F. Supp. at 959. This language was also found to apply to the offense of obstructing service of process. *Silverman*, 694 F.2d at 1095.

Although we have determined a physical act is not a requisite to prosecution under section 31—3, we respectfully reject the *Dewlow* interpretation and adhere to the remainder of the *Raby* and *Landry* definition. In determining whether there has been an obstruction of service of process, the proper focus is not upon whether actual delay occurred but, rather, on whether defendant created an obstacle that *may* result in a delay. Defendant created an obstacle for the judicial process when he deliberately contacted the authorities in order to mislead them. Deputy Scott correctly chose to question defendant's assertions. Police authorities successfully avoided the obstacle. This does not render defendant's conviction invalid.

Affirmed.

STEIGMANN, P.J., and GARMAN, J., concur.