NOS. 4-96-0062, 4-96-0063 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,    )   Appeal from

Plaintiff-Appellee,           )   Circuit Court of

v.                            )   McLean County

JAMES LEE MEISTER,                      )   Nos. 95CM573

Defendant-Appellant.          )        95CM553

                                        )

                                        )   Honorable

                                        )   Joseph H. Kelley,

                                        )   Judge Presiding.

_________________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

Following a jury trial in the circuit court of McLean County, defendant James Lee Meister was convicted of obstructing service of process (720 ILCS 5/31-3 (West 1994)) and criminal trespass to residence (720 ILCS 5/19-4 (West 1994)).  Defendant challenges only his conviction for obstructing justice.  De­fen­dant con­tends the evi­dence was in­suf­fi­cient to sup­port his ob­structing convic­tion because (1) he com­mitted no phys­ical act of obstruc­tion as pur­portedly required by the stat­ute and (2) no actual obstruc­tion occurred.  We af­firm.

I.  BACKGROUND

At trial, on October 11, 1995, Deputy Richard Scott of the McLean County sheriff's department testified he received a telephone call from defendant between 9:30 and 10:30 a.m. on February 21, 1995.  Defendant stated a neighbor informed him the police had been going to his home at 1824 West Olive, Bloomington, Illinois (Olive residence), and defendant wanted to know the reason for the visits.  Deputy Scott told defendant the offi­cers pos­sessed a subpoena to be served upon defendant's wife, Shannon Meister.  Defendant then claimed Shannon no longer re­sided at that residence and said he believed Shannon was residing at an un­known address in Florida.  Defendant stated he was being harassed by the officers and threatened to contact his attorney. Deputy Scott stated unless the depart­ment re­ceived solid in­forma­tion to the contrary, the department would continue to look for Shannon at the Olive residence.

Shortly after his conversation with defendant, Deputy Scott telephoned the Olive residence.  Shannon answered.  Deputy Scott told Shannon a subpoena had been issued for her to testify, an officer was standing by to serve the subpoena, and she needed to open the door.  Deputy Scott then radioed Deputy John Foster.

Shortly after 10 a.m. on February 21, 1995, Deputy Fos­ter re­ceived the call from Depu­ty Scott directing him to attempt ser­vice upon Shannon.  Shannon an­swered the door and he served her with the subpoena.  Deputy Foster made five prior at­tempts to serve the subpoena at the Olive resi­dence.  On one occasion, he ob­served a curtain move in a manner indicating someone was peek­ing from behind the cur­tain.  

Veronica Gray, Shannon's mother, testified she had no knowledge her daughter ever lived in Florida.  According to Gray, Shannon resided in Bloomington during February 1995, but Gray was unable to recall whether Shannon resided at the Salvation Army or at the Olive residence on February 21, 1995.

Shannon testified she and defendant separated in either the second or third week of February but she was unable to re­call the date.  Defendant stayed at the Olive residence, to which Shannon maintained a key.  Shannon lied to defendant and told him she was relocating to Florida.  On February 21, 1995, Shannon, who had not spoken with defendant since the separation, went to the Olive residence to gather some belongings without defendant's knowledge.  After she received the subpoena, Shannon called her husband at work.  Shannon returned to live at the Olive residence on either February 21 or 22, 1995.

Defendant testified when he and Shannon separated, Shannon informed him she was going to Florida to visit her grand­father and stepgrandmother, one of whom was ill.  Shannon took her child, defendant's stepson, with her.  After defendant asked a neighbor to watch his residence because he believed Shannon might return, the neighbor telephoned defendant at work to inform him the police had been to his residence.  From his place of employment, defendant contacted the police via telephone on two occasions regarding the police visits.  During the conversations, when the police inquired how they could contact Shannon, defen­dant stated they should ask her mother.  The police informed defendant they could go to his home at any time and, because of an earlier discussion with Gray, they would continue to look for Shannon there.  

The jury found defendant guilty of obstructing service of process.  Defendant filed a motion for a new tri­al, con­tend­ing the trial court erred in denying his motion for a direct­ed ver­dict because defendant's actions did not con­stitute a phys­ical act as allegedly required by the statute.  The trial court denied defendant's motion and sen­tenced de­fen­dant to 24 months' con­di­tional discharge for both the crimi­nal tres­pass and ob­structing offenses.  Defendant filed a timely notice of appeal.  The ap­peals were consolidated for our re­view, but the defendant's brief challenges only the conviction for obstruction of service of process.

II.  PHYSICAL ACT

Defendant argues the State failed to prove him guilty beyond a reasonable doubt by failing to show defendant obstructed service of process by a physical act.  The State maintains a physical act is not a prerequisite to prosecution under section 31-3 of the Criminal Code of 1961 (Code) (720 ILCS 5/31-3 (West 1994)) and, in the al­ter­na­tive, defendant's con­duct suf­fi­cient­ly con­sti­tuted a phys­i­cal act.

We will not overturn a criminal conviction unless the evidence is so improbable or unsatisfac­tory it casts reasonable doubt on defendant's guilt.  
People v. Collins
, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276 (1985).  When one challenges the suffi­ciency of the evi­dence, we will sustain a conviction if "'after viewing the evidence in the light most favorable to the prosecu­tion, 
any
 rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  (Emphasis in original.)  
Col­lins
, 106 Ill. 2d at 261, 478 N.E.2d at 277, quot­ing 
Jack­son v. Virgin­ia
, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979).

Section 31-3 of the Code provides the following:

"Whoever knowingly resists or obstructs the authorized service or execution of any civil or criminal process or order of any court commits a Class B misdemeanor."  720 ILCS 5/31-3 (West 1994).

The Gen­eral As­sem­bly sepa­rated the offense of ob­struct­ing ser­vice of process from the offense of ob­structing a peace offi­cer.  
People v. Koester
, 31 Ill. App. 3d 28, 31-32, 332 N.E.2d 755, 757-58 (1975), citing Ill. Ann. Stat., ch. 38, par. 31-3, Com­mit­tee Com­ments, at 740 (Smith-Hurd 1970).  Because sec­tions 31-1 (720 ILCS 5/31-1 (West 1994)) and 31-3 of the Code share the same ori­gin, an exam­i­na­tion of sec­tion 31-1 is bene­fi­cial for our re­view.  See 
Silverman v. Ballantine
, 694 F.2d 1091 (7th Cir. 1982).  Section 31-1(a) of the Code pro­vides, in part:  "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer *** commits a Class A misde­meanor."  720 ILCS 5/31-1(a) (West 1994).

In 
People v. Raby
, 40 Ill. 2d 392, 240 N.E.2d 595 (1968), the Supreme Court of Illinois adopted the language of an earlier federal case that interpreted section 31-1 for the pur­pose of determining whether the resisting-arrest provision was vague or overly broad:  

"'"Resisting" or "resistance" means "with­standing the force or effect of" or the "ex­er­tion of oneself to counteract or defeat".  "Obstruct" means "to be or come in the way of".  These terms are alike in that they imply some physical act or exertion.  Given a rea­sonable and natural construction, these terms do not proscribe mere argument with a police­man about the validity of an arrest or other police action, but proscribe only some physi­cal act which imposes an ob­stacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's du­ties, such as going limp, force­fully resist­ing arrest or physically aiding a third party to avoid arrest.'"  
Raby
, 40 Ill. 2d at 399, 240 N.E.2d at 599, quoting 
Landry v. Daley
, 280 F. Supp. 938, 959 (N.D. Ill. 1968), 
rev'd
 
on
 
other
 
grounds
 
sub
 
nom.
 
Boyle v. Landry
, 401 U.S. 77, 27 L. Ed. 2d 696, 91 S. Ct. 758 (1971).

In the review of convictions of obstructing a peace officer, appellate courts have worked within the "mere[ly] argu­ment" and "physical act" dichotomy set forth in 
Raby
 and 
Landry
.  
See, 
e.g.
, 
People v. Hilgenberg
, 223 Ill. App. 3d 286, 289, 585 N.E.2d 180, 183 (1991); 
People v. Ramirez
, 151 Ill. App. 3d 731, 735, 502 N.E.2d 1237, 1239-40 (1986);
 
People v. Weathington
, 76 Ill. App. 3d 173, 176, 394 N.E.2d 1059, 1061-62 (1979); 
People v. Conner
, 42 Ill. App. 3d 234, 238-39, 355 N.E.2d 662, 665-66 (1976).  Courts have encountered some difficulty in attempting to place a defendant's conduct squarely within either "mere argu­ment" or "some physical act."  See, 
e.g.
, 
People v. Gibbs
, 115 Ill. App. 2d 113, 253 N.E.2d 117 (1969); 
Conner
, 42 Ill. App. 3d 234, 355 N.E.2d 662.  

In 
Gibbs
, while police were conducting a search of 10 to 12 teenage boys, the defendant exited the Woodlawn Orga­niza­tion office (office) and declared the officers were violating the boys' constitutional rights.  Defendant informed the boys they should enter the office where, he opined, the police would be unable to conduct their search absent a valid warrant.  When defendant left the scene, seven or eight of the boys followed him into the office.  Police entered the office and learned the boys had joined a group of approximately 35 to 40 others and they were unable to finish the arrest.  The defendant in­formed the officers that, because he and the boys were on private prop­erty, they had no right to be in the office absent a warrant.  The de­fen­dant failed to heed an additional warning he was inter­fering with police business and was arrested.  
Gibbs
, 115 Ill. App. 2d at 115-16, 119, 253 N.E.2d at 118-19, 120.

The 
Gibbs
 court determined the language in 
Landry
 and 
Raby
 indicated the courts did not contemplate a situation where the actions of a defendant fall between "mere argument" with an officer and "some physical act."  After concluding defendant's conduct went beyond merely arguing with the police, the court affirmed his obstructing-a-peace-officer conviction.  
Gibbs
, 115 Ill. App. 2d at 117-19, 121, 253 N.E.2d at 119-20, 121.  

In 
Conner
, the evidence the jury believed showed the defendant approached within 10 to 15 feet of police officers who were arresting his brother, removed his jacket to reveal an empty shoulder holster, and threatened to kill the police officers if his brother was not released.  After an unidentified man grabbed the defendant from behind, the defendant struggled and continued to threaten the officers.  
Conner
, 42 Ill. App. 3d at 235-36, 355 N.E.2d at 663-64.  Although defendant came into no phys­ical con­tact with the police officers, the court determined his ac­tions constituted more than mere words and thus amounted to ob­struction under section 31-1 and 
Landry
 and 
Raby
.  
Conner
, 42 Ill. App. 3d at 238, 355 N.E.2d at 665.

Although apparently recognizing certain conduct may fall between the two extremes, the Supreme Court of Illinois has yet to determine such conduct is proscribed.  See 
People v. Weathington
, 82 Ill. 2d 183, 187, 411 N.E.2d 862, 864 (1980).  Like 
Gibbs
 and 
Conner
, this case involves a set of circumstances where the defendant went beyond merely arguing with the police but did not go as far as com­mitting a phys­ical act.  Viewing the evidence in the case before us in the light most favorable to the pros­ecu­tion, the facts show defendant inten­tion­ally 
ini­ti­ated
 con­tact with the police in order to fur­nish false in­forma­tion re­garding his wife's where­abouts.  This contact was designed to mislead the officers and delay the per­formance of their duties.  We find such conduct is pro­scribed by section 31-3.  

We note an examination of whether a defendant's conduct as a whole amounts to obstructing service of process better re­flects the purpose of section 31-3.  We believe too much empha­sis is often placed upon the 
Raby
 and 
Landry
 language.  The
 
Raby
 court inter­preted section 31-1 and 
considered whether the sec­tion was constitutional.  Yet, here, we are considering whether con­duct factually amounts to obstructing service of process.  As the first district noted, the two offenses consist of different ac­tions:  "[R]esisting arrest is a physical act that necessarily involves a physical struggle.  It does not potentially involve the broad range of actions that obstructing a peace officer can involve."  
People v. Lauer
, 273 Ill. App. 3d 469, 474, 653 N.E.2d 30, 33 (1995) (dis­tinguishing the two offenses for the purpose of deter­mining the sufficiency of a com­plaint).

Although the 
La
ndry
 and 
Raby
 language concludes "ob­struct[ing]" implies a "physical act or exertion," 
Lauer
 demon­strates obstructing does not necessarily involve a physical struggle.  The physical-implication conclusion drawn by the 
Lan­dry
 and 
Raby
 courts is inconsistent with the 
Lauer
 deci­sion but, more importantly, is also inconsistent with the General Assemb­ly's use of the phrase "obstructing justice" in section 31-4.  See 720 ILCS 5/31-4 (West 1994).  In section 31-4(a), a non­physi­cal act, the provision of false information, is sufficient to "ob­struct" justice or, in other words, "to be or come in the way of" jus­tice.

Moreover, when considering obstructing service of pro­cess, the intentional, self-initiated provision of false informa­tion as to the identity or whereabouts of an individual could actually be a greater obstruction than if one simply physically stood be­tween the server and the person to be served.  We believe the Gen­eral Assembly sought to pro­tect the judi­cial process from such intrusion because the prop­er ser­vice of pro­cess de­pends upon the identi­ty and location of the individ­ual.  

III.  ACTUAL DELAY

Defendant further argues the State failed to prove defendant's conduct actually obstructed the service of process. Defendant notes approximately 15 minutes following his telephone conversation with Deputy Scott, Shannon was served with the sub­poena.  The State argues 
Silverman
 demonstrates there exists no requirement for an actual delay.  Even if an actual delay is required, the State argues defendant's conduct did hinder or de­lay the officers for at least a brief period.

Defendant failed to include this argument in his post-trial mo­tion and has waived this issue for review.  
Peo­ple v. Enoch
, 122 Ill. 2d 176, 187, 522 N.E.2d 1124, 1130 (1988).  His argument also fails on the merits.

In 
People v. Dewlow
, 54 Ill. App. 3d 5, 6-7, 369 N.E.2d 270, 271 (1977), the first district reversed a conviction for obstructing a peace officer after it concluded defendant's behav­ior resulted in no actual delay.  According to 
Landry
 and 
Raby
, however, section 31-1 proscribes "'some physical act which impos­es an obstacle which 
may
 impede, hinder, interrupt, prevent or delay the performance of the officer's duties.'"  (Emphasis add­ed.)  
Raby
, 40 Ill. 2d at 399, 240 N.E.2d at 599, quoting 
Lan­dry
, 280 F. Supp. at 959.  This language was also found to apply to the offense of obstructing service of process.  
Silverman
, 694 F.2d at 1095.  

Although we have determined a physical act is not a requisite to prosecution under section 31-3, we respectfully reject the 
Dewlow
 interpretation and adhere to the remainder of the 
Raby
 and 
Landry
 definition.  In determining whether there has been an obstruction of service of process, the proper focus is not upon whether actual delay occurred but, rather, on whether defendant created an obstacle that 
may
 result in a delay.  Defen­dant created an obstacle for the judicial process when he delib­erately contacted the authorities in order to mislead them.  Deputy Scott correctly chose to question defendant's assertions.  Police authorities successfully avoided the obstacle.  This does not render defendant's con­vic­tion in­val­id.

Affirmed.

STEIGMANN, P.J., and GARMAN, J., concur.