In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 07-2098

KAREN Y. SHIPMAN,

*Plaintiff-Appellee,*

*v.*

ERIC HAMILTON,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Illinois.
No. 06 C 242—**Michael J. Reagan**, *Judge.*

_____

ARGUED DECEMBER 4, 2007—DECIDED APRIL 1, 2008

_____

Before RIPPLE, MANION, and WOOD, *Circuit Judges.*

MANION, *Circuit Judge.* Karen Shipman filed suit pursuant to 42 U.S.C. § 1983 against Deputy Eric Hamilton of the Randolph County Sheriff's Department. In her complaint, Shipman asserted that Hamilton had violated her rights under the Fourth and Fourteenth Amendments when he arrested her while she was on duty as a nurse at the Sparta Community Hospital (the "hospital") in Sparta, Illinois. Hamilton filed a motion for summary judgment. In that motion, he argued that he had probable cause to arrest Shipman. In the alternative, Hamilton asserted that he was

entitled to qualified immunity. The district court denied Hamilton's motion, and he filed this interlocutory appeal. We affirm.

## I.

We begin by setting forth the facts as the district court found them, that is, in the light most favorable to Shipman. *See Johnson v. Jones*, 515 U.S. 304, 319-20 (1995). On the night of April 28, 2005, Shipman, a registered nurse, was on duty at the medical-surgical floor of the hospital. While Shipman had worked a few shifts in the hospital's emergency room, that night was Shipman's first night on duty on the medical-surgical floor.

Around midnight, Hamilton and Deputy Rod Queen entered the hospital to serve an emergency order of protection[1] on Roscoe Handsbury, a 60-year-old patient at the hospital who was in an "ICU-like" environment. At the time the officers arrived, Shipman was the highest-ranking nurse, and the only registered nurse, on the floor. The officers announced that they had papers to serve Handsbury and asked to speak to Handsbury's nurse. In response, Shipman told the officers that she was Handsbury's nurse.

What happened next is disputed. While Hamilton testified at his deposition that Shipman would not give the officers Handsbury's location, Shipman testified at her deposition that she pointed out to the officers the room where Handsbury was located. (Shipman's testimony is

---

[1]   The record does not disclose why the officers had to serve the emergency order of protection on Handsbury.

confirmed by Queen, who testified at his deposition that Shipman told them where Handsbury was and that they could see Handsbury through the window in his room.) According to Shipman, after she gave the officers Handsbury's location, Hamilton inquired about Handsbury's condition. Shipman responded that, although she was not sure of his exact condition, she thought she needed to call the doctor because the report on Handsbury stated that he had been extremely upset and crying throughout the day. Shipman then told the officers that, given his condition, she thought they should wait for the doctor to be present before serving Handsbury. Shipman was concerned about a stroke or other potential medical complication if the officers woke up Handsbury in the middle of the night to serve him. She also feared violating her obligations under the Health Insurance Portability and Accounting Act if she let the officers into Handsbury's room.

At that point, Hamilton suggested that Shipman call her supervisors. Shipman first called the on-call doctor, Dr. Elvira Salarda. Salarda told Shipman that Handsbury was not going anywhere and that the officers should come back in the morning when she was present. Salarda also suggested that Shipman call her supervisor Kathy Lehr. At her deposition, Shipman testified that, while she was on the phone with the doctor, Hamilton started to become aggravated. After getting off the phone with Salarda, Shipman called Lehr and explained to her what Salarda had said. Shipman then gave the phone to Hamilton (who, Shipman testified, was at this point "very aggravated"). Lehr told Hamilton that he ought to return to the hospital at 8:00 a.m. the next morning so he could serve Handsbury while a doctor was present.

Meanwhile, after handing the phone to Hamilton, Shipman—believing matters would be taken care of—returned to her nursing duties. As soon as Hamilton got off the phone, however, he approached Shipman, who was preparing an IV, told her she had blocked his service of process by calling the doctor, stated that he was going to arrest her, and demanded her name. According to Shipman, she did not respond to Hamilton because she was "stunned."[2] Hamilton then grabbed Shipman by the arms, cuffed her, and forced her down the hallway, out of the hospital. The charges filed against Shipman list "obstructing service of process" in violation of 720 ILCS 5/31-3 and "obstructing a peace officer" in violation of 720 ILCS 5/31-1 as the grounds for the arrest.[3]

On March 24, 2006, Shipman filed this § 1983 action against Hamilton. She alleged that Hamilton violated her rights under the Fourth and Fourteenth Amendments by arresting her without probable cause. Hamilton moved for summary judgment. He argued that he had probable cause to arrest Shipman. In the alternative, he asserted that he was entitled to qualified immunity. The district court denied the motion on both grounds, and Hamilton appeals.

## II.

The only question before us on this appeal is whether, taking the facts as the district court presented them, the

---

[2]   Shipman also testified that she was wearing a name badge displaying her name, title, and picture.

[3]   We assume that these charges were later dismissed, though the record contains no reference to their dismissal.

district court erred in finding that Hamilton was not entitled to qualified immunity for his arrest of Shipman. We have jurisdiction to consider this purely legal question. *Via v. Lagrand*, 469 F.3d 618, 623 n.2 (7th Cir. 2006) (citing *Johnson*, 515 U.S. at 317); *see also Sallenger v. Oakes*, 473 F.3d 731, 738 (7th Cir. 2007) ("Recognizing the urgency of denials of qualified immunity, [a denial of] summary judgment on these grounds is deemed a 'final judgment' under 28 U.S.C. § 1291 and is immediately appealable."). We review a district court's denial of summary judgment on qualified immunity grounds de novo. *Washington v. Haupert*, 481 F.3d 543, 546 (7th Cir. 2007).

Qualified immunity shields governmental actors performing discretionary functions from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Whether an officer is entitled to qualified immunity in any particular case is a two-step inquiry. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, taking the facts in the light most favorable to the plaintiff, we must consider whether the officer's conduct violated a constitutional right. *Id*. If no constitutional right would have been violated were the plaintiff's allegations established, our inquiry is at an end and summary judgment should be entered in favor of the officer. *Id*. "On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id*. "[F]or a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right"; in other words, "in the light of preexisting law the unlawfulness must be apparent." *White v. City*

*of Markham*, 310 F.3d 989, 993 (7th Cir. 2002) (internal quotations omitted). "If the right was clearly established, the officer is *not* entitled to qualified immunity." *Washington*, 481 F.3d at 547 (emphasis in original).

In this case, the constitutional right Shipman alleges that Hamilton violated when he arrested her without a warrant was her right to be free from an unreasonable seizure under the Fourth and Fourteenth Amendments. "The Fourth Amendment permits warrantless arrests only if the arresting officer has probable cause to believe that a crime has been committed." *Id*. (citing *Thompson v. Wagner*, 319 F.3d 931, 934 (7th Cir. 2003)). Probable cause exists where an officer reasonably believes, in light of the facts and circumstances known to the officer at the time of the arrest, that the suspect had committed or was committing an offense. *Payne v. Pauley*, 337 F.3d 767, 776 (7th Cir. 2003). "The test is an objective one and evaluates whether probable cause existed on the facts as they appeared to a reasonable police officer, even if the reasonable belief of that officer is ultimately found to be incorrect." *Id*. (citing *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998)). According to the charges filed against Shipman, Hamilton arrested Shipman for obstructing service of process in violation of 720 ILCS 5/31-3 and obstructing a peace officer in violation of 720 ILCS 5/31-1. The question, then, is whether Hamilton had probable cause to arrest Shipman for either of those offenses.

We can immediately rule out probable cause for an arrest of Shipman for obstruction of a peace officer. Under Illinois law, the offense of obstructing a police officer requires some sort of physical resistance on the part of the suspect. *Payne*, 337 F.3d at 776 ("It is well settled under Illinois law . . . that the resistance [720 ILCS 5/31-1 requires] must

be physical . . . .”). Here, taking the facts as we have them, Shipman did not physically resist Hamilton.

That leaves the offense of obstructing service of process as the only ground upon which Hamilton can justify his arrest of Shipman. Obstructing service of process is defined as “knowingly resist[ing] or obstruct[ing] the authorized service or execution of any civil or criminal process or order of any court.” 720 ILCS 5/31-3. In arguing that he had probable cause to arrest Shipman for obstructing service of process—or at least could have reasonably believed under existing law that he had probable cause to do so—Hamilton places great emphasis on his view that Illinois law is less than clear on what constitutes obstructing service of process under 720 ILCS 5/31-3. According to Hamilton, the offense of obstructing service of process, unlike the offense of obstructing a peace officer, does not require an act of physical resistance. Rather, Hamilton argues that a reasonable police officer could believe that the offense of obstructing service of process could be committed simply by any action or inaction that might impede, hinder, or delay the performance of the officer’s duties.

In support of his interpretation of Illinois law, Hamilton relies on *Silverman v. Ballantine*, 694 F.2d 1091 (7th Cir. 1982), and *People v. Meister*, 682 N.E.2d 306 (Ill. Ct. App. 1997). In *Silverman*, this court held that a decedent had obstructed service of process when he, in no uncertain terms, informed officers that they were not going to seize his computer equipment, retreated from a reception area to his inner office, and continued to refuse the officers access to the equipment after they unlocked the door of the reception area and entered his office. 694 F.2d at 1092-93, 1095. This court noted that “[a]lthough obstructing

service or execution of process under [720 ILCS 5/31-3]
cannot be premised on 'mere argument' with a police
officer, it may be premised on a physical act which . . . may
impede, hinder, interrupt, prevent or delay the perfor-
mance of the officer's duties." *Id.* at 1095 (citing *People v.
Raby*, 240 N.E.2d 595 (Ill. 1968)) (internal quotation omit-
ted). In *Meister*, the defendant called the police who were
seeking to serve a subpoena on his wife and gave false
information about his wife's whereabouts. 682 N.E.2d at
309. Noting that the intentional, "self-initiated provision of
false information" to the police could pose a greater
obstruction on many occasions than any physical act, the
court in *Meister* held that a physical act was not required to
obstruct service of process under 720 ILCS 5/31-3. *Id.* at
309-10 ("We believe too much emphasis is often placed
upon the *Raby* . . . language [requiring a 'physical act'].").
The court then found that the defendant's false information
created an obstacle that may have "impede[d], hinder[ed],
interrupt[ed], prevent[ed] or delay[ed] the performance of
the officer's duties" and therefore constituted obstructing
service of process. *Id.* at 310.

   We need not determine whether Hamilton is correct in
asserting that *Silverman* and *Meister* take the offense of
obstructing service of process beyond a physical-resistance
requirement. Even if it is unclear as to whether Illinois law
requires physical resistance to arrest a person for obstruct-
ing service of process, no reasonable police officer encoun-
tering the facts as the district court has set them forth in
this case could have believed that he had grounds to arrest
Shipman for obstructing service of process. At no point
before her arrest did Shipman take any action, physical or
otherwise, to hinder the officers' ability to serve
Handsbury. Indeed, Shipman affirmatively assisted

Hamilton. When Hamilton asked Shipman where Handsbury was, Shipman pointed him to Handsbury's exact location. From where he was standing, Hamilton could see Handsbury through the window in Handsbury's room. At any point after he obtained Handsbury's location from Shipman, Hamilton could have walked into Handsbury's room and served him; yet Hamilton never did.

Nevertheless, Hamilton presents several theories of how he could have reasonably believed Shipman's actions constituted the offense of obstructing service of process as he defines it. First, Hamilton contends Shipman obstructed his service of Handsbury by advising the officers that, given Handsbury's tenuous condition, they might want to wait until a doctor was present before serving Handsbury. This advice was given only after Hamilton initiated a conversation with Shipman about Handsbury's condition. Moreover, it was only advice; Shipman did not order the officers to wait for a doctor. Nor did Shipman threaten to refuse the officers entry into Handsbury's room if they did not wait. Thus, Shipman's suggestion that the officers wait for a doctor could not possibly have impeded or delayed Hamilton's service of Handsbury because Hamilton was free to ignore her suggestion, walk into Handsbury's room, and serve him. But, again, for whatever reason, Hamilton chose not to do so.

Second, Hamilton faults Shipman for not giving him permission to enter Handsbury's room. He asserts that a reasonable officer could have believed that express permission was necessary before entering Handsbury's room. Consequently, Hamilton argues that Shipman's failure to give him express authority to serve the order could reasonably be construed as obstruction. The facts as they are

presented to us, however, indicate that the authority was
not Shipman's to give. Although Shipman was the only
registered nurse on duty on the medical-surgical floor, this
was her first night on that floor. She did not appear to
believe that she had the authority to allow the officers to
enter (in the middle of the night) an "ICU-like" room of an
older patient in poor condition, since she recommended
that the officers wait for a doctor. Hamilton apparently did
not believe that Shipman had the authority either, since it
was at his suggestion that Shipman called her supervisors.
Because neither Shipman nor Hamilton believed that
Shipman had the authority to give Hamilton permission to
enter Handsbury's room, a reasonable officer could not
have believed that Shipman was impeding or hindering his
ability to serve Handsbury by not giving him permission to
enter the room.

   Next, Hamilton asserts that Shipman's handing him the
phone (to talk to her supervisor), then walking away to
resume her hospital duties, obstructed him. But as previ-
ously discussed, that assertion fails. At the point Shipman
resumed her duties, she had (1) shown Hamilton where
Handsbury was; (2) expressed concern about Handsbury's
condition, his possible negative medical reaction when
confronted by the officers delivering the notice, and the
limits to her own authority under the law as well as the
rules and procedures of the hospital; (3) called
Handsbury's treating physician, who advised delaying
service until she arrived in the morning and told Shipman,
in the meantime, to contact her supervisor about hospital
procedure; (4) contacted her supervisor who advised
waiting until morning for service; and (5) handed the
phone to Hamilton to talk directly to the supervisor (the
presumed decisionmaker). Even if a reasonable officer

would not have served Handsbury, despite knowing his location, because he could have believed that he needed express authority to enter Handsbury's room, it should have been clear to such an officer at the time Shipman returned to her duties that the authority to enter Handsbury's room was not Shipman's to give. Consequently, Shipman could not have posed any impediment to serving Handsbury because her involvement was at an end. She could do no more to help the officers; her failure to do more cannot constitute obstruction.

Finally, Hamilton contends that Shipman's failure to give her name upon request constituted obstruction. Like the others, this theory does not survive scrutiny because Hamilton had *already* informed Shipman that she was under arrest before he asked her for her name. Thus, because Hamilton had already arrested her, Shipman's failure to give Hamilton her name cannot add anything to the analysis as to whether Hamilton had probable cause to make the arrest in the first place. *Payne*, 337 F.3d at 776 (probable cause must be based on the facts and circumstances known to the officer at the time of the arrest).

In sum, the district court did not err in denying Hamilton's motion for summary judgment based on qualified immunity. Under these facts, a reasonable officer would not have believed that he had grounds to arrest Shipman, the only registered nurse on duty that night.

III.

The district court did not err in denying Hamilton's motion for summary judgment based on qualified immunity. Under the facts as they are presented to us, no reasonable officer could have believed that he had proba-

ble cause to arrest Shipman for obstructing service of process after she affirmatively assisted the officers by pointing out the location of Handsbury, the person to be served. In addition, Shipman's failure to give Hamilton express authority to enter Handsbury's room did not constitute obstruction because neither she nor Hamilton believed the authority was hers to give. We AFFIRM.